1 | ROBERT J. STUMPF, JR., Cal. Bar No. 72851
MARTIN WHITE, Cal. Bar No. 253476
2 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
3 | San Francisco, California 94111-4109
Telephone:    415-434-9100
4 | Facsimile:    415-434-3947
rstumpf@sheppardmullin.com
5 |
Attorneys for Defendant LYDIAN PRIVATE
6 | BANK, VIRTUALBANK, A DIVISION OF
LYDIAN PRIVATE BANK
7 |

**E-filing**

**FILED**

MAR 3 0 2011

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8 | UNITED STATES DISTRICT COURT

9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

11 |

12 | PROVIDENT FUNDING ASSOCIATES,
L.P.,

13 |
Plaintiff,

14 |
v.

15 |
LYDIAN PRIVATE BANK,
16 | VIRTUALBANK, A DIVISION OF LYDIAN
PRIVATE BANK, and Does 1 through 20,

17 |
Defendants.
18 |

Case No.: **11 1538**

(Formerly San Mateo County Superior Court
Case No. CIV 495700)

**DEFENDANT LYDIAN PRIVATE
BANK'S NOTICE OF REMOVAL**

19 |

20 |         Defendant Lydian Private Bank ("Lydian"), doing business as VirtualBank, and

21 | sued as Lydian Private Bank, VirtualBank, a Division of Lydian Private Bank, hereby removes the

22 | action entitled Provident Funding Associates, L.P. v. Lydian Private Bank, Case No. CIV 495700,

23 | pending in the California Superior Court for the County of San Mateo, to the United States District

24 | Court for the Northern District of California, San Francisco Division, pursuant to 28 U.S.C. §§

25 | 1332, 1441 and 1446.

26 |

27 |

28 |

-1-

DEFENDANT LYDIAN PRIVATE
BANK'S NOTICE OF REMOVAL

1

## JURISDICTION

2      1.      This is an action over which this Court has jurisdiction under 28 U.S.C.

3  § 1332(a)(1), in that it is a civil action between citizens of different states and the amount in

4  controversy exceeds the sum of $75,000, exclusive of interest and costs. This action may be

5  removed to this Court pursuant to 28 U.S.C. § 1441(b).

6

## PROCEDURAL BACKGROUND

7      2.      Plaintiff Provident Funding Associates, L.P. ("Provident") served Lydian

8  with a Summons, dated June 7, 2010, and a Complaint for Breach of Written Contract, dated

9  June 2, 2010 (the "Complaint"). A copy of the Summons and Complaint is annexed as Exhibit A.

10      3.      Lydian served Provident with an Answer to Complaint for Breach of

11  Written Contract, dated July 29, 2010 (the "Answer"). A copy of the Answer is annexed as

12  Exhibit B.

13      4.      Provident served Lydian with a First Supplemental Complaint for Breach of

14  Written Contract, dated October 22, 2010 (the "Supplemental Complaint"). A copy of the

15  Supplemental Complaint is annexed as Exhibit C.

16      5.      Lydian served Provident with an Amended Answer to Complaint and First

17  Supplemental Complaint for Breach of Contract, dated March 23, 2011 (the "Amended Answer").

18  A copy of the Amended Answer is annexed as Exhibit D.

19      6.      The parties were served with a Notice of Case Management Conference,

20  dated October 6, 2010 (the "Notice"). A copy of the Notice is annexed as Exhibit E.

21

## DIVERSITY OF CITIZENSHIP EXISTS

22      7.      As set forth below, Provident's members are citizens of California and

23  Lydian is a citizen of Florida. The citizenship of Provident's members was not identified in the

24  pleadings in this action. Lydian could not ascertain the existence of diversity of citizenship in this

25  action until March 24, 2011.

26

27

28

-2-

DEFENDANT LYDIAN PRIVATE
                                                                                   BANK'S NOTICE OF REMOVAL

1        8.     The Complaint alleges that Provident "has been a California limited

2 partnership." Compl., Ex. A ¶ 1. The Complaint does not identify Provident's members or

3 provide their states of citizenship.

4        9.     The Supplemental Complaint does not identify Provident's members or

5 provide their states of citizenship.

6        10.    The citizenship of a partnership for diversity purposes is determined by

7 looking to the citizenship of each of its members. Mutuelles Unies v. Kroll & Linstrom, 957 F.2d

8 707, 711 (9th Cir. 1992). Therefore, the Complaint and Amended Complaint did not establish

9 whether this action was removable.

10      11.    On March 1, 2011, Lydian served interrogatories on Provident requesting

11 that, inter alia, Provident identify each of its partners and their states of citizenship for the

12 purposes of determining diversity of citizenship under 28 U.S.C. § 1332.

13      12.    On March 24, 2011, Lydian received Provident's response to the

14 interrogatories (the "Interrogatory Response"). A copy of the Interrogatory Response is annexed

15 as Exhibit F.

16      13.    The Interrogatory Response states that, inter alia, as of the date of filing of

17 the Complaint, Provident's "general partner was a California corporation with its principal place

18 of business in California and that all of its limited partners were natural persons who were citizens

19 of California." Interrog. Resp., Ex. F, Resp. to Interrog. No. 232. Thus, Provident's members

20 were all citizens of California at the time the Complaint was filed. See 28 U.S.C. § 1332(c)(1).

21      14.    Lydian is chartered by the Office of Thrift Supervision of the United States

22 Treasury as a Federal savings association within the meaning of 12 U.S.C. § 1464. Lydian's home

23 office is located at 3801 PGA Boulevard, Suite 700, Palm Beach Gardens, Florida 33410-2756.

24 Therefore, Lydian is a citizen of Florida. See 12 U.S.C. § 1464(x).

25      15.    The citizenship of defendants sued under fictitious names, such as "Doe"

26 defendants, is disregarded for diversity purposes. 28 U.S.C. § 1441(a).

27

28

-3-

1        16.     Since Provident's members were citizens of California and Lydian was a

2   citizen of Florida at the time the Complaint was filed, there is diversity of citizenship for the

3   purposes of 28 U.S.C. § 1332.

4                        **THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

5        17.     The Complaint and Amended Complaint seek breach of contract damages

6   concerning Lydian's refusal to repurchase or pay Provident its alleged losses on more thirty

7   mortgage loans.  Provident alleges that the unpaid principal balances on loans that Lydian refused

8   to repurchase, and Provident's losses for which Lydian refused to pay Provident, are in the

9   millions of dollars.

10       18.     Provident also seeks attorneys' fees.

11       19.     Therefore, the amount in controversy in this action exceeds $75,000.

12                                    **REMOVAL IS TIMELY**

13       20.     This Notice of Removal is being filed within the time allotted by 28 U.S.C.

14   § 1446(b).  The Interrogatory Response comprised an "other paper from which it may first be

15   ascertained that [this] case is one which is . . . removable" because it established the citizenship of

16   Provident's members for diversity purposes for the first time in this action.  28 U.S.C. § 1446(b);

17   see Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 887 (9th Cir. 2010).  Lydian received

18   the Interrogatory Response on March 24, 2011.  Lydian filed this Notice of Removal within thirty

19   days of March 24, 2011.  It has been less than one year after commencement of the action.  See

20   28 U.S.C. § 1446(b).

21                                         **VENUE**

22       21.     Provident filed this action in San Mateo County Superior Court.  Therefore,

23   the United States District Court for the Northern District of California is the appropriate venue for

24   removal of this action.

25                              **INTRADISTRICT ASSIGNMENT**

26       22.     Pursuant to Local Rule 3-5(b), Lydian requests assignment to the San

27   Francisco Division.  This action is being removed from San Mateo County Superior Court, which

28

-4-

1    is closer to San Francisco than any other Division of the Court. Provident's principal place of

2    business is closer to San Francisco than Oakland. Lydian witnesses will be able to travel from

3    Lydian's principal place of business in Florida to San Francisco more easily than to Oakland.

4                                  **NOTICE AND FILING**

5           23.     Lydian will promptly provide written notice of removal of this action to

6    Provident and file this Notice of Removal with the clerk of the San Mateo County Superior Court.

7    See 28 U.S.C. § 1446(d).

8           WHEREFORE, Lydian hereby requests that the United States District Court for the

9    Northern District of California assume jurisdiction over this action in accordance with 28 U.S.C.

10   §§ 1332, 1441 and 1446.

11   Dated: March 29, 2011

12                                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

13

14                                By

15                                            Robert J. Stumpf, Jr.
                                              Martin White

16
                                              Attorneys for
17                                LYDIAN PRIVATE BANK, VIRTUALBANK,
                                  A DIVISION OF LYDIAN PRIVATE BANK
18

19

20

21

22

23

24

25

26

27

28

                                              -5-

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

| |
|---|
| **FOR COURT USE ONLY** |
| **(SOLO PARA USO DE LA CORTE)** |

**NOTICE TO DEFENDANT:** LYDIAN PRIVATE BANK, VIRTUALBANK,
*(AVISO AL DEMANDADO):* A DIVISION OF LYDIAN PRIVATE
BANK, and Does 1 through 20

FILED
O COUNTY

JUN - 7 2010

The Superior Court
BY DV CLERK

**YOU ARE BEING SUED BY PLAINTIFF:** PROVIDENT FUNDING
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* ASSOCIATES, L.P.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SAN MATEO SUPERIOR COURT<br>400 County Center<br>Redwood City, CA 94063-1655 | **CASE NUMBER:** **CIV** 4 9 5 7 0 0<br>*(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
NEIL R. O'HANLON, SBN 57018                               Tel. (310)785-4600
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Los Angeles, CA 90067

| | | | | |
|---|---|---|---|---|
| DATE:<br>*(Fecha)* JUN - 7 2010 | **JOHN C. FITTON** | Clerk, by<br>*(Secretario)* | _____ | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |

Legal Solutions Plus

1  HOGAN LOVELLS US LLP
2  NEIL R. O'HANLON, SBN 67018
   1999 Avenue of the Stars, Suite 1400
3  Los Angeles, CA  90067
   Tel. (310) 785-4600
4  Fax (310) 785-4601          ＨＨ21/NRO

   Attorneys for Plaintiff

5

**FILED**
**SAN MATEO COUNTY**

JUN - 7 2010

Clerk of the Superior Court
By
DEPUTY CLERK

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF SAN MATEO

10

11  PROVIDENT FUNDING              )   Case No.  **CIV** 4 9 5 7 0 0
    ASSOCIATES, L.P.,              )
12                                 )   **COMPLAINT FOR BREACH OF**
                  Plaintiff,       )   **WRITTEN CONTRACT**
13                                 )
           vs.                     )
14                                 )
    LYDIAN PRIVATE BANK,           )
15  VIRTUALBANK, A DIVISION OF     )
    LYDIAN PRIVATE BANK, and Does  )
16  1 through 20,                  )
                                   )
17              Defendants.        )
                                   )
18

19       Plaintiff alleges:

20       1.       At all times mentioned herein Plaintiff Provident Funding Associates, L.P.

21  ("Provident Funding") has been a California limited partnership.

22       2.       Provident Funding is informed and believes and, on that ground, alleges that

23  at all times mentioned herein Defendant Lydian Private Bank has been a bank organized

24  under the laws of the United States, and that Defendant VirtualBank has been a division of

25  Lydian Private Bank.

26       3.       Provident Funding is currently unaware of the true names and capacities of

27  the defendants sued herein as Does 1 through 20 (the "Doe Defendants") and therefore sues

28  the Doe Defendants by such fictitious names.  Provident Funding will amend this

1 Complaint to allege the true names and capacities of the Doe Defendants when they are

2 ascertained. Provident Funding is informed and believes and, on that ground, alleges that

3 the Doe Defendants are the officers, directors, shareholders, partners, agents, principals,

4 alter egos, and/or co-conspirators of the other defendants, and of each other, and that each

5 of the defendants was the agent, joint venturer, or employee of each of the other defendants

6 and was acting within the course and scope of such agency, joint venture, or employment

7 with the advance knowledge, acquiescence, or subsequent ratification of each of the other

8 defendants. Therefore, each of the Doe Defendants is liable to Provident Funding as

9 alleged herein.

10     4.     On or about October 13, 2006 in the County of San Mateo Provident Funding

11 and VirtualBank, a division of Lydian Private Bank ("Lydian"), entered into and executed

12 a written Correspondent Seller Agreement (the "Agreement"), pursuant to which Lydian

13 agreed to originate mortgage loans and sell them to Provident Funding. A true and correct

14 copy of the Agreement is attached as Exhibit 1.

15     5.     Pursuant to Section 2.02(F) of the Agreement, the mortgage loans being sold

16 to be sold by Lydian had to comply in all material respects with all of the terms and

17 conditions of the Agreement as well as the "Underwriting Guidelines" (as defined in

18 Section I of the Agreement).

19     6.     Pursuant to Section 4.02 of the Agreement, Lydian made certain

20 representations and warranties to Provident Funding concerning the mortgage loans to be

21 sold to it by Lydian, including without limitation the following:

22          (a)     All signatures, names, addresses, amounts, and other statements of

23 fact appearing on the credit application and other documents relating to a mortgage loan

24 would be true and correct (Subsection (C), at p. 20);

25          (b)     Each mortgage loan and related documents would satisfy the

26 "Underwriting Guidelines" (Subsection (L), at p. 21).

27     7.     Pursuant to Section 5.02 of the Agreement, Lydian agreed to indemnify

28 Provident Funding and hold it harmless from, and on demand pay, any damages incurred

---

\` WLA - 098259/000028 - 365925 v3

COMPLAINT FOR BREACH OF WRITTEN
CONTRACT

2

1    by Provident Funding as a result of any breach by Lydian of any representation or

2    warranty, which breach materially and adversely affected the value or marketability of one

3    or more mortgage loans.

4         8.    Pursuant to Section 6.01 of the Agreement, Lydian agreed to repurchase any

5    mortgage loan sold to Provident Funding within ten business days of receipt of written

6    notice from Provident of any of the following:

7              (a)    an uncured breach by Lydian of a representation or warranty which

8    materially and adversely affected the value or marketability of a mortgage loan (Subsection

9    (A), at p. 27);

10             (b)    a demand from an investor to whom Provident Funding had sold a

11   mortgage loan for its repurchase by Provident Funding due to the inaccuracy of any

12   representation or warranty made by Lydian or any loan quality defects adversely affecting

13   an investor's interests in a mortgage loan (Subsection (B), at p. 27).

14        9.    Provident Funding has performed all covenants, conditions, and agreements

15   required on its part to be performed under the Agreement.

16        10.    During the period October 2006 through August 2007, Lydian sold numerous

17   mortgage loans to Provident Funding pursuant to the Agreement. Lydian is in default of its

18   obligations under the Agreement as a result of having sold certain mortgage loans to

19   Provident Funding with material defects and having materially breached representations

20   and warranties made to Provident Funding regarding mortgage loans being sold, including

21   the following:

22             (1)    The borrower on the Barrera loan (Provident Funding loan

23   # 1117060830) misrepresented his employment. In October 2009 the investor demanded

24   that Provident Funding make it whole for its loss on the foreclosed loan, and Provident

25   Funding demanded that Lydian pay the loss, but Lydian failed to respond. Provident

26   Funding has been damaged in the sum of no less than $235,178.44;

27             (2)    The borrower on the Bonilla loan (Provident Funding loan

28   # 1117080573) misrepresented his income. Also, the file failed to document that the

1    proceeds of the second mortgage being paid off had been used in their entirety to purchase

2    the property, so the loan should have (but had not) been underwritten as a cash-out

3    refinance. In February 2010 Provident Funding demanded that Lydian repurchase the loan,

4    but Lydian failed to respond. The unpaid principal balance of the loan is $234,752.46;

5            (3)    The automated underwriting system approval for the Brown loan

6    (Provident Funding loan # 1117061052) was incorrect, since it did not take into account

7    the second mortgage on the property. Also, the appraisal indicated that there were certain

8    construction problems relating to the property, and it was never updated to show that they

9    had been fixed. In addition, the borrower misrepresented his income. In April 2009

10   Provident Funding demanded that Lydian repurchase the loan, but Lydian failed to

11   respond. The loan is in default, and the unpaid principal balance of the loan is

12   $425,460.54;

13           (4)    The borrower on the Castillo loan (Provident Funding loan

14   # 1117060981) misrepresented his income, which caused the mortgage insurer to rescind

15   coverage in July 2009. In October 2009 the investor demanded that Provident Funding

16   make it whole for its loss on the foreclosed loan, and Provident Funding demanded that

17   Lydian pay the loss, but Lydian failed to respond. Provident Funding also based its

18   demand on the fact that the loan file lacked required documentation showing that certain

19   collection accounts had been paid off, and the appraisal of the property was never

20   completed. The foreclosed property is being marketed for sale, and the unpaid principal

21   balance of the loan at the time of foreclosure was $248,343.08;

22           (5)    The borrower on the Cortes loan (Provident Funding loan

23   # 1117080439) misrepresented his income. In April 2010 Provident Funding demanded

24   that Lydian repurchase the loan, but Lydian refused. Provident Funding repurchased the

25   foreclosed loan for $216,746.72, and the foreclosed property is being marketed for sale;

26           (6)    The loan file for the Cullen loan (Provident Funding loan

27   # 1116101079) lacked required documentation including a current paystub and a complete

28   bank statement for a certain account. In May 2010 Provident Funding demanded that

---

COMPLAINT FOR BREACH OF WRITTEN
CONTRACT

4

1  Lydian repurchase the loan, but Lydian failed to respond. The unpaid principal balance of

2  the loan is $115,581.65, and the loan is in foreclosure;

3         (7)    The loan file for the D'Angelo loan (Provident Funding loan

4  # 1116120176) lacked required documentation, including proof that the borrower had

5  certain funds to close the loan, had certain rental income, and owned a certain business. In

6  December 2009 Provident Funding demanded that Lydian repurchase the loan, but Lydian

7  refused. The unpaid principal balance of the loan is $146,368.69;

8         (8)    The loan file for the Deweese loan (Provident Funding loan

9  # 1116120150) lacked required documentation, including certain tax returns and bank

10  statements. In January 2010 the investor demanded that Provident Funding repurchase the

11  loan, and Provident Funding demanded that Lydian repurchase the loan, but Lydian failed

12  to respond. The current status and unpaid principal balance of the loan are not presently

13  known;

14         (9)    The borrower on the Duarte loan (Provident Funding loan

15  # 1117060855) misrepresented his employment and income. In April 2010 Provident

16  Funding demanded that Lydian repurchase the loan, but Lydian failed to respond. The

17  unpaid principal balance of the loan is $254,566.64;

18         (10)    The borrower on the Espinoza loan (Provident Funding loan

19  # 1117080414) misrepresented his income. In November 2009 the investor demanded that

20  Provident Funding repurchase the loan, and Provident Funding demanded that Lydian

21  repurchase the loan, but Lydian failed to respond. Provident Funding repurchased the loan

22  for $402,099.39, and the loan is in foreclosure;

23         (11)    The borrower on the Garcia loan (Provident Funding loan

24  # 1117080418) failed to disclose two mortgage loans she had obtained. In September 2009

25  the investor demanded that Provident Funding make it whole for its loss on the foreclosed

26  loan, and Provident Funding demanded that Lydian pay the loss, but Lydian failed to

27  respond. In addition, the borrower misrepresented her income. Provident Funding has

28  been damaged in the sum of no less than $167,389.61;

1 (12) The borrower on the Garrido loan (Provident Funding loan

2 # 1116120356) misrepresented his income. In April 2009 Provident Funding demanded

3 that Lydian repurchase the loan, but Lydian failed to respond. The foreclosed property is

4 being marketed for sale, and the unpaid principal balance of the loan at the time of

5 foreclosure was $314,965.90;

6 (13) The borrower on the Gordon loan (Provident Funding loan

7 # 1116101155) misrepresented his employment. In February 2010 the investor demanded

8 that Provident Funding repurchase the loan, and Provident Funding demanded that Lydian

9 repurchase the loan, but Lydian failed to respond. The current status and unpaid principal

10 balance of the loan are not presently known;

11 (14) The loan file for the Hayden loan (Provident Funding loan

12 # 1117031569) did not establish the stability of the borrower's income and therefore failed

13 to show that the borrower had sufficient income. In October 2009 the investor demanded

14 that Provident Funding make it whole for its loss on the foreclosed loan, and Provident

15 Funding demanded that Lydian pay the loss, but Lydian failed to respond. Provident

16 Funding has been damaged in the sum of no less than $97,786.83;

17 (15) The borrower on the Henry loan (Provident Funding loan

18 # 1117031324) misrepresented his income. In January 2010 Provident Funding demanded

19 that Lydian repurchase the loan, but Lydian failed to respond. Provident Funding

20 repurchased the loan for $253,653.96, and the borrower is presently in bankruptcy;

21 (16) The borrower on the Hurtak loan (Provident Funding loan

22 # 1117031398) misrepresented his income. In January 2010 Provident Funding demanded

23 that Lydian make it whole for its loss on the foreclosed loan in the estimated amount of

24 $192,997, but Lydian failed to respond;

25 (17) The borrower on the Miles loan (Provident Funding loan

26 # 1117080597) misrepresented his intent to occupy the property as his principal residence

27 as required. In February 2010 the investor demanded that Provident Funding make it

28 whole for its loss on the foreclosed loan, and Provident Funding demanded that Lydian pay

COMPLAINT FOR BREACH OF WRITTEN
6 CONTRACT

1 the loss, but Lydian failed to respond. Provident Funding repurchased the foreclosed loan

2 for $151,814.28, and the foreclosed property is being marketed for sale;

3       (18)   The borrower on the Natter loan (Provident Funding loan

4 # 1117060856) misrepresented his obligations, making it impossible to determine his debt-

5 to-income as required. In addition, the borrower misrepresented his self-employment

6 status. In February 2010 the investor demanded that Provident Funding repurchase the

7 loan, and Provident Funding demanded that Lydian repurchase the loan, but Lydian failed

8 to respond. The unpaid principal balance of the loan is $430,662.11;

9       (19)   The borrower on the Puacz loan (Provident Funding loan

10 # 1116120074) misrepresented her intent to occupy the property as her principal residence

11 as required. Also, the loan file contained illegible documents relating to assets and income.

12 In December 2008 Provident Funding demanded that Lydian repurchase the loan, but

13 Lydian failed to respond. The unpaid principal balance of the loan is $93,970.20;

14       (20)   The borrower on the Rubelcava loan (Provident Funding loan

15 # 1117021973) misrepresented his employment. In May 2010 Provident Funding

16 demanded that Lydian repurchase the loan, but Lydian failed to respond. The loan is in

17 default, and the unpaid principal balance of the loan is $173,111.18;

18       (21)   The borrower on the Serratos loan (Provident Funding loan

19 # 1116101176) misrepresented his income and employment. In November 2009 the

20 investor demanded that Provident funding make it whole for its loss on the foreclosed loan,

21 and Provident Funding demanded that Lydian pay the loss, but Lydian failed to respond.

22 Provident Funding has been damaged in the sum of no less than $205,267.36;

23       (22)   The broker of record on the Sterrett loan (Provident Funding loan

24 # 1117080624) was on the investor's exclusionary list, making the loan non-investment

25 quality. In April 2010 the investor demanded that Provident Funding repurchase the loan,

26 and Provident Funding demanded that Lydian repurchase the loan, but Lydian failed to

27 respond. The unpaid principal balance of the loan is $257,926.08;

28

COMPLAINT FOR BREACH OF WRITTEN
CONTRACT

1           (23)    The borrower on the Turner loan (Provident Funding loan

2   # 1117031393) misrepresented his income, and the mortgage payoff statement in the loan

3   file did not show the borrower as being the mortgagor on the prior loan. In October 2009

4   the investor demanded that Provident Funding repurchase the loan, and Provident Funding

5   demanded that Lydian repurchase the loan, but Lydian failed to respond. Provident

6   Funding repurchased the loan for $273,729,48, and the loan is in foreclosure;

7           (24)    The borrower on the Wishart loan (Provident Funding loan

8   # 1116100956) misrepresented his obligations. In August 2009 the investor demanded that

9   Provident Funding repurchase the loan, and Provident Funding demanded that Lydian

10  repurchase the loan, but Lydian failed to respond. Provident Funding repurchased the loan

11  for $166,828,66, and the loan is in foreclosure.

12        11.    As a direct and proximate result of the foregoing breaches, Provident

13  Funding has been damaged in an amount not presently known. Pursuant to Section 8.05 of

14  the Agreement, in the event of a dispute between the parties arising out of the Agreement,

15  the prevailing party is entitled to recover costs, including reasonable attorney's fees

16  actually incurred.

17       WHEREFORE, Provident prays judgment as follows:

18      1.    For damages according to proof;

19      2.    For costs of suit, including such reasonable attorney's fees as may be allowed

20  by law;

21      3.    For such other, further, or different relief as the Court may deem proper.

22

23  DATED: June 2, 2010          HOGAN LOVELLS US LLP

24

25                By *neil K. O'Hanlon*

26                    Neil R. O'Hanlon

27                Attorneys for Plaintiff

28

                             COMPLAINT FOR BREACH OF WRITTEN

               8     CONTRACT

# VERIFICATION

I have read the foregoing COMPLAINT FOR BREACH OF WRITTEN CONTRACT and know its contents.

I am an Audit Supervisor of Provident Funding Associates, L.P., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on June 2, 2010 at Burlingame, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Harry Wong



**EXHIBIT**





**EXHIBIT**

232137                                                         232137

## PROVIDENT FUNDING ASSOCIATES, L.P.

### CORRESPONDENT SELLER AGREEMENT

**THIS CORRESPONDENT SELLER AGREEMENT** is made this 13 day of October, 2006, by and between Provident Funding Associates, L.P. ("Provident Funding"), and Virtual Bank, a Division of Lydian Private Bank, a federal savings bank organized under the laws of the United States (the "Seller"), with reference to the following facts.

    A.    The Seller intends to originate Mortgage Loans and desires to sell such Mortgage Loans to Provident Funding.

    B.    Provident Funding desires to purchase Mortgage Loans from the Seller.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**I.**    **DEFINITIONS**

For purposes of this Agreement the following capitalized terms shall have the respective meanings set forth below:

**Agreement:** This Correspondent Seller Agreement, including all exhibits, schedules amendments and supplements hereto, and the Provident Funding Correspondent Web Site, as the same may be revised from time to time as provided herein.

**Appraised Value:** With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by an appraisal made for the originator of the related Mortgage Loan at the time of origination of such Mortgage Loan by an appraiser who meets the minimum appraisal requirements of FNMA or FHLMC, or (ii) the purchase price (plus added value of documented improvements) of such Mortgaged Property by the Mortgagor at the time of origination of such Mortgage Loan.

**Assignment of Mortgage:** An individual assignment of a Mortgage, notice of transfer or equivalent instrument in recordable form sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to give record notice of the sale of the related Mortgage Loan to Provident Funding.

## EXHIBIT  1

**Bailee Letter:** A writing from a Warehouse Lender to Provident Funding, satisfactory in form and content to Provident Funding in its sole discretion, which relates to a Mortgage Loan to be sold to Provident Funding hereunder and which contains a release, upon the occurrence of certain events, of all of such Warehouse Lender's right, title and interest (including without limitation security interests) in and to such Mortgage Loan. [PLEASE NOTE:   BAILEE LETTERS RARELY CONTAIN UNCONDITIONAL RELEASES; IF SUCH LETTERS CONTAIN RELEASES AT ALL, THE RELEASES TYPICALLY ARE CONDITIONED UPON THE WAREHOUSE LENDER'S RECEIPT OF THE AMOUNT OF ITS WAREHOUSE LOAN (THAT CORRESPONDS TO THE APPLICABLE MORTGAGE LOAN).]

**Business Day:** Any day other than a Saturday or Sunday, or a day on which banking and savings and loan institutions in the State of California are authorized or obligated by law or executive order to be closed.

**Case:** Provident Funding's communications system (sometimes referred to by Provident Funding as the Case System), accessible through the Provident Funding Correspondent Web Site, pursuant to which the Seller must raise all inquiries, and make all other communications (except as may be otherwise provided herein), concerning a Mortgage Loan with Provident Funding.

**Condemnation Proceeds:** All awards, compensation and settlements relating to a taking of all or part of a Mortgaged Property by exercise of the power of condemnation or the right of eminent domain.

**Cut-Off Date:** With respect to each Mortgage Loan Package, the third Business Day prior to the related Funding Date, or such other date agreed to by the Seller and Provident Funding and set forth in the related Purchase Price and Terms Agreement.

**Due Date:** The first day of each month.

**Fannie Mae or FNMA:** Federal National Mortgage Association or any successor thereto.

**Freddie Mac or FHLMC:** Federal Home Loan Mortgage Corporation or any successor thereto.

**Funding Date:** The date on which Provident Funding purchases a Mortgage Loan and pays the Purchase Price for such Mortgage Loan, as set forth in the related Purchase Price and Terms Agreement. This is also known as the Purchase Date.

**HUD:** The United States Department of Housing and Urban Development or any successor thereto.

**Impound/Escrow Adjustment:** The amount that is deducted from the Purchase Price for a Mortgage Loan on account of the existence of an impound/escrow account with respect to such Mortgage Loan. The amount of the Impound/Escrow Adjustment is set forth on the related Purchase Price and Terms Agreement and may be referred to therein as the "Escrow Balance."

**Impound/Escrow Payments:** The amounts constituting ground rents, taxes, assessments, water charges, sewer rents, fire, wind, hazard and flood insurance premiums, and other payments required to be impounded or escrowed by the Mortgagor with the Mortgagee pursuant to the terms of any Mortgage Note or Mortgage

**Insurance Proceeds:** With respect to each Mortgage Loan, proceeds of insurance policies insuring the related Mortgaged Property.

**Liquidation Proceeds:** Amounts, other than Insurance Proceeds and Condemnation Proceeds, received in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise, other than amounts received following the acquisition of REO Property.

**Loan-to-Value Ratio or LTV:** With respect to any Mortgage Loan as of any date of determination, the lesser of the ratio on such date of: (i) the outstanding principal amount of such Mortgage Loan to the Appraised Value of the related Mortgaged Property, or (ii) the outstanding principal amount of such Mortgage Loan to the sales price of such Mortgaged Property, if such a sale occurred at origination of such Mortgage Loan.

**Mandatory Commitment:** An obligation of the Seller, specified in the related Price and Terms Agreement, to sell to Provident Funding hereunder the Mortgage Loan specified in such Purchase Price and Terms Agreement.

3

**Mandatory Commitment Amount:** The original commitment amount specified in the applicable Purchase Price and Terms Agreement.

**MERS:** The Mortgage Electronic Registration System, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

**MERS Mortgage Loan:** Any Mortgage Loan registered with MERS on the MERS System.

**MERS System:** The system of recording transfers of mortgages electronically maintained by MERS.

**MIN:** The Mortgage Identification Number for any MERS Mortgage Loan.

**Monthly Payment:** With respect to each Mortgage Loan, the scheduled combined payment of principal, interest, and Impound/Escrow Payments payable by the Mortgagor under the related Mortgage Note on the applicable Due Date.

**Mortgage:** The mortgage, deed of trust or other instrument creating a first lien on Mortgaged Property securing the related Mortgage Note.

**Mortgage File:** The file of documents pertaining to a particular Mortgage Loan, which file contains all documents required by the Provident Funding Correspondent Web Site, including without limitation, the related original Mortgage Note, Assignment of Mortgage and Bailee Letter.

**Mortgage Loan:** Each Mortgage Loan which is the subject of a Purchase Price and Terms Agreement. In the case of each Mortgage Loan which is sold, assigned and transferred to Provident Funding pursuant to this Agreement, the phrase Mortgage Loan includes, without limitation the related Mortgage File, the Monthly Payments, all prepayments of principal and/or interest, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

**Mortgage Loan Documents:** The Mortgage Note, the Mortgage and the other documents pertaining to a Mortgage Loan as set forth in the Provident Funding Correspondent Web Site or as required to be a part of the related Mortgage File.

**Mortgage Loan Schedule:** the schedule of Mortgage Loans annexed to the related Purchase Price and Terms Letter, which schedule sets forth the following information with respect to each Mortgage Loan in the related Mortgage Loan Package:

(1) the Seller's Mortgage Loan identifying number;

(2) the Mortgagor's name;

(3) the street address of the Mortgaged Property including the city, state and zip code;

(4) a code indicating whether the Mortgaged Property is owner-occupied, a second home or an investor property;

(5) the type of residential property constituting the Mortgaged Property;

(6) the original months to maturity;

(7) the Appraised Value (including the purchase price of the Mortgaged Property, if applicable);

(8) the interest rate applicable to the Mortgage Note at origination and as of the related Cut-off Date;

(9) the Mortgage Loan origination date;

(10) the actual interest paid through date;

(11) the scheduled interest paid through date;

(12) the stated maturity date of the Mortgage Loan;

(13) the amount of the Monthly Payment at origination and as of the related Cut-off Date;

(14) the original principal amount of the Mortgage Loan;

(15) LTV at origination;

(16) a code indicating the purpose of the Mortgage Loan (*i.e.*, purchase, rate and term refinance, equity take-out refinance);

(17) a code indicating the documentation style (*i.e.*, full, alternative or reduced);

(18) the date on which the first Monthly Payment is due subsequent to the origination date;

(19) a code indicating whether or not the Mortgage Loan is insured as to payment defaults by a Primary Mortgage Insurance Policy; and, in the case of any Mortgage Loan which is insured as to payment defaults by a Primary Mortgage Insurance Policy, the name of the provider of such Primary Mortgage Insurance Policy;

(20) a code indicating whether or not the Mortgage Loan is subject to a Prepayment Charge and, if so, the term of the Prepayment Charge and such other information necessary to calculate such Prepayment Charge;

(21) the Private Mortgage Insurance Policy certificate number, if applicable;

(22) the Private Mortgage Insurance Policy coverage percentage, if applicable;

(23) a code indicating the credit score of the Mortgagor at the time of origination of the Mortgage Loan;

(24) the specific loan/underwriting program of each Mortgage Loan as assigned by the Seller pursuant to the Underwriting Standards;

(25) with respect to each adjustable rate Mortgage Loan, the first adjustment date and the adjustment date frequency;

(26) with respect to each adjustable rate Mortgage Loan, the gross margin;

(27) with respect to each adjustable rate Mortgage Loan, the maximum mortgage interest rate under the terms of the Mortgage Note;

(28) with respect to each adjustable rate Mortgage Loan, the minimum interest rate under the terms of the Mortgage Note;

(29) with respect to each adjustable rate Mortgage Loan, the initial rate cap and periodic rate cap;

(30) with respect to each adjustable rate Mortgage Loan, the first adjustment date immediately following origination and the related Cut-off Date;

(31) with respect to each adjustable rate Mortgage Loan, the index;

6

(32) with respect to each adjustable rate Mortgage Loan, a code indicating whether the Mortgage Loan is a convertible Mortgage Loan;

(33) the loan type (i.e., fixed, adjustable; 2/28, 3/27, 5/25, etc.);

(34) a code indicating whether the Mortgage Loan is a MERS Mortgage Loan and, if so, the corresponding MIN;

(35) a code indicating the form of appraisal in the related Mortgage File (i.e. form 1004, 2055, etc.); and

(36) a code indicating if the Mortgage Loan is an interest-only Mortgage Loan (including any Mortgage Loans with any interest-only features) and, if so, the term of the interest-only period of such Mortgage Loan; and

(37) a code indicating whether the Mortgaged Property is subject to a First Lien or a Second Lien.

**Mortgage Note:** The original executed promissory note or other evidence of the Mortgage Loan indebtedness of a Mortgagor.

**Mortgaged Property:** The Mortgagor's real property securing repayment of a related Mortgage Note, consisting of a fee simple interest in real property improved by a Residential Dwelling.

**Mortgagee:** The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

**Mortgagor:** The obligor on a Mortgage Note, the owner of the related Mortgaged Property and the grantor or mortgagor named in the related Mortgage, and such grantor's or mortgagor's successors in title to the Mortgaged Property.

**Officer's Certificate:** A certificate signed by: (i) the Chairman of the Board, the Vice Chairman of the Board, the President or a Vice President, and (ii) the Treasurer, the Secretary, one of the Assistant Treasurers or Assistant Secretaries, of the Person on behalf of whom such certificate is being delivered.

**Package Due Date:** The date which is specified on the applicable Purchase Price and Terms Agreement. The Package Due Date is the date by which the complete original Mortgage File (including without limitation the related Assignment of Mortgage (for Mortgage Loans that are not registered with MERS), Note and, if

7

applicable, Bailee Letter) must be received by Provident Funding in purchasable condition in order to ensure the related Mortgage Loan will be purchased at the price stipulated in the related Purchase Price and Terms Agreement.

**Pair Off Fee:** A monetary assessment charged to the Seller whenever a Mortgage Loan which is the subject of a Mandatory Commitment is not purchased by Provident Funding hereunder due to (i) any failure of such Mortgage Loan to satisfy the conditions, or (ii) any failure of the Seller to satisfy any other requirement hereunder relating to such Mortgage Loan.

**Pair Off Fee Assessment Date:** The date which is specified in the applicable Purchase Price and Terms Agreement.

**Pair Off Fee Calculation:** As of the Pair Off Fee Assessment Date, the product of: (a) the difference between the Mandatory Commitment Amount (less the Pool Tolerance) and the Purchased Principal Balance and (b) the difference between (i) the Purchase Price Percentage specified in the original related Purchase Price and Terms Agreement, and (ii) the final buy price that would have been specified for such Mortgage Loan had such final buy price been calculated on such Pair Off Fee Assessment Date.

**Person:** An individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision thereof.

**Pool Tolerance:** The amount set forth in the applicable Purchase Price and Terms Agreement.

**Premium:** The portion of the Purchase Price attributable to the principal balance of the related Mortgage Loan, which portion exceeds par. Par is expressed as 100%. Accordingly, if the amount paid for the principal balance of such Mortgage Loan is 101.125%, the Premium would equal 1.125% of such principal balance.

**Prepayment Charge:** With respect to each Mortgage Loan, the charge (if any) that is assessed if the Mortgagor prepays such Mortgage Loan as provided in the related Mortgage Note or Mortgage.

**Private Mortgage Insurance Policy:** The policy of private mortgage guaranty insurance (including all endorsements thereto) issued with respect to a Mortgage

Loan, if any, or any replacement policy that meets the current published guidelines of Fannie Mae or Freddie Mac.

**Private Mortgage Insurer:**   The named insurer under any Private Mortgage Insurance Policy.

**Purchase Date:**  The date on which Provident Funding purchases a Mortgage Loan and pays the Purchase Price for such Mortgage Loan, as set forth in the related Purchase Price and Terms Agreement. This is also known as the Funding Date.

**Purchase Price:**   The net amount paid on the applicable Purchase Date by Provident Funding to the Seller for the related Mortgage Loan, as set forth in the related Purchase Price and Terms Agreement.

**Purchase Price and Terms Agreement:**  A letter in the form of Exhibit A attached hereto and incorporated herein by reference, which sets forth the Purchase Price Percentage and other terms relating to the sale of a Mortgage Loan by the Seller to Provident Funding (including, without limitation, any and all schedules attached thereto).

**Purchased Principal Balance:**  As to each Mortgage Loan, the original principal amount of such Mortgage Loan minus all payments of principal received with respect to such Mortgage Loan on or before the Cut-Off Date for such Mortgage Loan.

**REO Disposition:**  The final sale by Provident Funding of any REO Property.

**REO Property:**  A Mortgaged Property acquired as a result of the liquidation of a Mortgage Loan.

**Repurchase Price:**  An amount calculated pursuant to Section 6.02 to satisfy a repurchase obligation under Section 6.01 or any other provisions of this Agreement.

**Residential Dwelling:**  Any one of the following: (i) a detached one-family dwelling, (ii) a detached two-to-four-family dwelling, (iii) an attached single family dwelling, or (iv) certain approved attached two-to-four-family dwellings.

**Seller's Wire Instructions:**  The wire instructions provided by the Seller to Provident Funding, as set forth in the applicable Purchase Price and Terms Agreement.

9

**Service Release Premium or SRP:** A fee paid by Provident Funding to the Seller for the purchase of the income stream realized from the servicing of a Mortgage Loan. Such fee represents a portion of the Purchase Price Percentage for such Mortgage Loan, and is specified in the related Purchase Price and Terms Agreement (and is referred to therein as the "Final SRP").

**Servicing Transfer Date:** With respect to each Mortgage Loan, the date or dates set forth in the related Purchase Price and Terms Agreement (or as otherwise agreed in writing by Provident Funding and the Seller) upon which the actual transfer of servicing responsibilities for any Mortgage Loan subject to such Purchase Price and Terms Agreement is transferred from the Seller to Provident Funding or its designee.

**Underwriting Guidelines:** As to each Mortgage Loan, and as specified in the applicable Purchase Price and Terms Agreement, the Seller's written underwriting guidelines in effect for the applicable loan program, or those of Fannie Mae or Freddie Mac.

**Warehouse Lender:** Any lender providing financing to the Seller for the purpose of originating a Mortgage Loan and which has a security interest in such Mortgage Loan as collateral for the obligation of the Seller to such lender.

**II.   PURCHASE AND SALE OF MORTGAGE LOANS**

2.01   **Agreement to Purchase and Sell:** The Seller agrees to sell and Provident Funding agrees to purchase from time to time Mortgage Loans in accordance with the terms and subject to the conditions of this Agreement (including the applicable Purchase Price and Terms Agreement.

2.02   **Requirements of Mortgage Loans:** Each of the Mortgage Loans offered by the Seller to Provident Funding pursuant to this Agreement shall satisfy and conform to each of the following requirements (in addition to all other requirements set forth in this Agreement and the Provident Funding Correspondent Web Site):

A.   Each Mortgage Loan shall be closed, funded and fully secured by a first lien Mortgage on a Residential Dwelling which is eligible in all respects, except for the outstanding principal balance, for inclusion in Fannie Mae or Freddie Mac pools of mortgage backed securities or in privately issued mortgage backed securities. Loans for purposes of constructing properties will not be accepted (other than "modified

**10**

to perm" loans). HUD/FHA, VA and Farmers Home Administration loans (Government Loans) will not be accepted.

B. Each Mortgage Loan shall bear interest as specified in the related Mortgage Loan Schedule.  Each Mortgage Loan shall as of the Funding Date comply in all material respects with the requirements of this Agreement.

C. Each Mortgage Loan shall be originated by the Seller, not by a correspondent or broker of the Seller or by any other person or entity unless the Seller has received specific approval to the contrary in writing by Provident Funding. For purposes of this subsection 2.02C the word "originated" shall include all of the following steps: (i) the Seller obtaining a loan application from a borrower; (ii) subject to subsections 2.02E and 2.02G, the Seller doing all of the processing of the Mortgage Loan package; (iii) such Mortgage Loan being closed in the name of the Seller; and (iv) the Seller being at all applicable times capable of funding such Mortgage Loan, and actually funding such Mortgage Loan with its own resources and not the resources of Provident Funding.

D. Each Mortgage Loan purchased will have a Purchased Principal Balance as of the Funding Date in an amount which falls between the minimum and maximum (if any) loan amounts specified, as of such Funding Date, for the applicable loan program or category on the Provident Funding Correspondent Web Site.

E. The Seller shall be responsible for the proper closing of each Mortgage Loan. The Seller shall, to the extent necessary, interim service the Mortgage Loans in accordance in all material respects with

F. Each Mortgage Loan must comply with Section 2.06 concerning the review and approval thereof by Provident Funding prior to purchase. In addition each Mortgage Loan must comply in all material respects with all of the terms and conditions of (i) this Agreement, (ii) the Purchase Price and Terms Agreement, and (iii) the Underwriting Guidelines. Upon payment by Provident Funding to the Seller of the

Purchase Price for a Mortgage Loan hereunder, such Mortgage Loan shall not be encumbered in favor of a Warehouse Lender or any third Person or Persons.

G. A Private Mortgage Insurance Policy will be required on all Mortgage Loans having greater than an 80% Loan-to-Value Ratio, as well as on certain other Mortgage Loans as determined in Provident Funding's sole discretion from time to time.  Each such Private Mortgage Insurance Policy must be satisfactory in form and content to Provident Funding, in its sole but reasonable discretion, and issued by a Private Mortgage Insurer satisfactory to Provident Funding, in its sole but reasonable discretion.

H. The Mortgaged Property for any Mortgage Loan must be owned entirely by one or more individuals (or a intervivos trust meeting any applicable Fannie Mae requirements), and each such individual must mortgage his or her entire respective undivided interest in such Mortgaged Property for the benefit of Provident Funding so that Provident Funding holds a first lien Mortgage on the entire legal and beneficial interest in such Mortgaged Property.

I. Notwithstanding anything herein to the contrary, it is understood and agreed that:  (i) certain documents and disclosures relating to the Mortgage Loan, including, without limitation, the application for such Mortgage Loan (but excluding the Note, Mortgage, any applicable powers of attorney, and Assignments of Mortgage) may be provided by the Seller and/or may be executed by the Mortgagor electronically, in compliance with the federal Electronic Signatures in Global and National Commerce Act ("E-SIGN") and, if applicable, the Uniform Electronic Transactions Act ("UETA") adopted by the state in which the electronic record (i.e., the contract or other record created, generated, sent, communicated, received, or stored by electronic means) relating to such document or disclosure is initiated; and (ii) the Seller may also deliver a portion of the Mortgage File to Provident Funding in the form of a CD ROM or copies reproduced from electronic images of original documents ("Original Documents") stored on CD ROM or magnetic tape ("Imaged Documents"), not to include any documents the originals of which are required to be

12

delivered pursuant to this Agreement ("Original Documents") stored on magnetic tape or through other electronic means.

2.03   Pre-Purchase Review:  In order for a Mortgage Loan to be eligible for purchase by Provident Funding pursuant to this Agreement, the related Mortgage File (containing all documents required under this Agreement and/or the applicable Purchase Price and Terms Agreement) must be submitted to Provident Funding or made available for Provident Funding's review, in complete and purchaseable form, no later than the Package Due Date for such Mortgage Loan specified in the applicable Purchase Price and Terms Agreement.

If a Mortgage File is not delivered or made available as aforesaid by the related Package Due Date for any reason whatsoever, Provident Funding shall have no obligation to review, provide conditions, or purchase the related Mortgage Loan, unless otherwise agreed by Provident Funding. If such Mortgage File is delivered by such Package Due Date in complete and purchaseable form, Provident Funding will promptly review such Mortgage File.  If any deficiencies (which deficiencies would, if discovered after the applicable Funding Date, constitute a breach of a representation, warranty or covenant by the Seller under this Agreement) are found in such review, Provident Funding will so notify the Seller by providing prompt written notice to the Seller with a detailed explanation of any such deficiencies and a description of any and all conditions (the "Conditions") that must be satisfied to cure any such deficiencies.  The Seller will have until the Business Day immediately preceding the Funding Date to remedy all such Conditions.  If all such Conditions are satisfactorily remedied within the time period specified in the preceding sentence, in Provident Funding's sole but reasonable discretion, or if no deficiencies were found in the review by Provident Funding, then in either such event Provident Funding shall give the Seller written notice of the satisfaction of such Conditions, and such Mortgage Loan will be purchased in accordance with the terms of this Agreement and the applicable Purchase Price and Terms Agreement.

Seller acknowledges that in order for a Mortgage Loan to be purchased by Provident Funding hereunder, the Seller must have satisfied all of the terms of this Agreement and of the related Purchase Price and Terms Agreement (including, without limitation, any Conditions) by no later than the Business Day immediately preceding the applicable Funding Date (as identified in the applicable Purchase Price and Terms Agreement).

13

If, with respect to any Mortgage Loan, any and all such Conditions are not satisfactorily remedied, in Provident Funding's sole but reasonable discretion, by the close of business on the Business Day immediately preceding the Funding Date, Provident Funding shall have no obligation to purchase the related Mortgage Loan.

2.04   **Pair Off Fees:**   If a Mortgage Loan which is the subject of a Mandatory Commitment is not purchased by Provident Funding because the Seller failed to satisfy any applicable Condition related to such Mortgage Loan, the Seller shall pay Provident Funding a Pair Off Fee calculated pursuant to the Pair Off Fee Calculation. Each Pair Off Fee will be due and payable as soon as demand is made therefor pursuant to written notice by Provident Funding to the Seller.

2.05   **Books and Records:**   The sale of each Mortgage Loan hereunder shall be reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller. The Seller shall be responsible for maintaining, and shall maintain, a complete set of books and records for each Mortgage Loan which shall be clearly marked to reflect the ownership (after the applicable Funding Date) of such Mortgage Loan by Provident Funding, for so long as is required by applicable law.

2.06   **Property Tax Payments:**   For each Mortgage Loan which is sold pursuant to this Agreement, it shall be the Seller's responsibility to see that all property taxes on the related Mortgaged Property which are due and payable prior to or within thirty (30) days after the applicable Purchase Date are paid in full. The Seller shall prepare and forward to Provident Funding a statement showing the next property tax payment due date for each Mortgage Loan purchased by Provident Funding hereunder. All applicable tax receipts relating to such Mortgaged Property are to be promptly forwarded by the Seller upon receipt to Provident Funding. All new tax bills relating to such Mortgaged Property received by the Seller and which the Seller is not obligated to pay pursuant to the foregoing provisions shall be promptly forwarded to Provident Funding to permit the payment thereof prior to the applicable penalty date.

2.07   **Hazard and Flood Insurance Payments:**   For each Mortgage Loan which is sold pursuant to this Agreement, it shall be the Seller's responsibility to see that all hazard and flood insurance premiums for insurance required with respect to such Mortgage Loan which are due and payable prior to or within thirty (30) days

14

after the applicable Purchase Date are paid in full. All new insurance premium bills relating to such Mortgage Loan received by the Seller and which the Seller is not obligated to pay pursuant to the foregoing provisions will be promptly forwarded to Provident Funding.

2.08   **Purchase Price:**  The Purchase Price paid by Provident Funding for each Mortgage Loan purchased hereunder shall be the sum of (a) the product of the Purchase Price Percentage and the Purchased Principal Balance and (b) accrued interest on the Purchased Principal Balance of the related Mortgage Loan through the day preceding the Funding Date at the interest rate under the applicable Mortgage Note.  The Seller agrees that servicing on each Mortgage Loan purchased hereunder will be transferred to Provident Funding on the Servicing Transfer Date.  The Seller shall be responsible to collect any payments from the applicable borrower which are due prior to such first payment to Provident Funding.  As a result, the parties shall make an appropriate adjustment to reflect this state of facts in the related Purchase Price and Terms Agreement. Provident Funding shall own and be entitled to receive: (a) with respect to each Mortgage Loan purchased by Provident Funding pursuant to this Agreement, all principal payments due, and all other recoveries of principal received, after the related Purchase Date,  and (b) with respect to each Mortgage Loan purchased by Provident Funding hereunder, all payments or other recoveries of interest on the portion of the principal amount of such Mortgage Loan which is owned by Provident Funding.  For the purposes of the Agreement, payments of principal and interest on any Mortgage Loan purchased pursuant to this Agreement which constitute prepayments of amounts received after the applicable Purchase Date shall be the property of Provident Funding, and shall be taken into account in the calculation of the applicable Purchase Price.  The Seller shall remit all such prepaid amounts to Provident Funding on the related Servicing Transfer Date.

2.09   **Ownership of Mortgage Loan:**  Upon the purchase of a Mortgage Loan hereunder by Provident Funding, and the receipt by the Seller of the applicable Purchase Price, the ownership of such Mortgage Loan and the related Mortgage Note, Mortgage, Mortgage Loan Documents and Mortgage File shall be vested in Provident Funding and the ownership of all records and documents with respect to such Mortgage Loan prepared by or which come into the possession of the

15

Seller shall immediately vest in Provident Funding and shall be delivered promptly by the Seller to Provident Funding.

2.10 **Notices.** The Seller shall notify each insurance carrier providing insurance with respect to each Mortgage Loan or the related Mortgaged Property, including without limitation the hazard insurance, flood insurance and mortgage insurance carriers, of the sale of such Mortgage Loan to Provident Funding, and cause each such insurance carrier to update the loss payee, mortgagee or such other similar clauses of the applicable insurance policies as may be specified by Provident Funding, in favor of Provident Funding in a manner satisfactory to Provident Funding in its reasonable discretion. The Seller also is obligated to notify MERS, in accordance with all applicable rules and regulations, of such sale and to comply with all servicing transfer requirements of RESPA. The Seller also shall give such other notices and take such other actions as Provident Funding may require from time to time in its reasonable discretion for the purpose of effecting the transfer to Provident Funding of each Mortgage Loan, together with all rights, interests, contracts and privileges relating thereto, purchased by Provident Funding hereunder. All such notices and other actions will be given and performed on the Purchase Date for such Mortgage Loan or no later than the close of business on the first Business Day after such Purchase Date. The Seller shall not give any such notice or take any such action before such Purchase Date.

III. **POST SETTLEMENT OBLIGATIONS**

3.01 **Early Prepayment Policy:** In the event that (i) Provident Funding paid one or both of a Premium and a Service Release Premium in connection with the purchase of a Mortgage Loan and (ii) such Mortgage Loan is prepaid in full within ninety (90) days after the related Purchase Date, the Seller shall immediately pay to Provident Funding the full amount of such Premium and such Service Release Premium, as applicable; provided, however, that the Seller's obligation to make any such payment (a) shall not exist if the applicable Mortgage Loan was refinanced by Provident Funding, or any affiliate thereof, and (b) is contingent upon the Seller's receipt from Provident Funding of written notice of such prepayment, by no later than ninety (90) days following the date of such prepayment.

16

**3.02**   **Trailing Documents:** Seller is to provide to Provident Funding the following documents within one hundred-eighty (180) days of the Purchase Date:

- Original Final Title Policy
- Original Recorded Mortgage/Deed of Trust
- Original Recorded Assignment (for each Mortgage Loan that is not a MERS Mortgage Loan)
- Final HUD-1

To the following address with a cover page listing borrower name, loan number, and document(s) included in each shipment;

> Trailing Documents Supervisor
> 1235 North Dutton Avenue, Suite E
> Santa Rosa, CA 95401

Failure to deliver the Original Final Title Policy, the Original Recorded Mortgage/Deed of Trust, and/or the Original Recorded Assignment (for each Mortgage Loan that is not a MERS Mortgage Loan) within the time period required will result in a fee of $50.00 per document.

**3.03**   **Rights to Mortgage Insurance:**   Mortgage insurance required on all Mortgage Loans purchased by Provident Funding hereunder must be purchased from a Private Mortgage Insurer satisfactory to Provident Funding in its sole but reasonable discretion.   In each case where such Private Mortgage Insurer transfers all or any portion of such insurance to any affiliate or subsidiary of the Seller, the Seller shall cause such affiliate or subsidiary to transfer such insurance, together with all compensation received by such affiliate or subsidiary from such Private Mortgage Insurer with respect thereto, to Provident Funding's captive mortgage reinsurance company upon Provident Funding's purchase of the related Mortgage Loan hereunder.

**3.04**   **Survival of This Part:**   The rights of Provident Funding under this Article III shall survive termination of this Agreement and the resale of each Mortgage Loan by Provident Funding, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination of or failure to examine, any Mortgage File by Provident Mortgage.

17

**IV      REPRESENTATIONS AND WARRANTIES OF THE SELLER**

To induce Provident Funding to enter into this Agreement and to purchase Mortgage Loans hereunder, the Seller warrants and represents the truth and accuracy of each of the following warranties and representations, both on the date hereof and on each Purchase Date pursuant to this Agreement. The continuing truth and accuracy of each of these warranties and representations shall constitute a condition precedent to Provident Funding's obligation to make each purchase of a Mortgage Loan hereunder:

**4.01     General Representations and Warranties of the Seller**

A.     The Seller is duly organized, validly existing and in good standing under the laws of the state of its organization and each state in which it does business; and it possesses the requisite legal power and authority to enter into this Agreement and to consummate all of the transactions contemplated hereby.

B.     The Seller shall be responsible for the negligence, gross negligence, misfeasance, malfeasance or fraudulent acts of its employees and agents as they pertain to the performance by the Seller under this Agreement, including without limitation origination, processing, funding and closing of Mortgage Loans purchased by Provident Funding from the Seller, to the extent that any such negligence, gross negligence, misfeasance, malfeasance or fraudulent acts materially and adversely affect the value or marketability of one or more Mortgage Loans (or Provident Funding's interest therein).

C.     The execution, delivery and performance of this Agreement by the Seller has been duly authorized and all proceedings necessary to consummate -all of the transactions contemplated by this Agreement have been taken by the Seller.

D.     The Seller has received, and will maintain, all necessary federal, state and local licenses, permits, authorizations and approvals required to conduct its business as it is presently being conducted and to perform its obligations under this Agreement.

E.     The execution and delivery of this Agreement and the sale of each and every Mortgage Loan hereunder is not and will not be a breach, violation

18

or event of default (or an event which would become an event of default with the lapse of time or notice or both) under any judgment, decree, agreement, indenture or other instrument to which the Seller is party or otherwise subject.

F.  Neither the making or origination of any Mortgage Loan nor the consummation of the transactions contemplated by this Agreement, will result in a violation or infraction by the Seller of any applicable federal, state or local law, rule or regulation.

G.  This Agreement is the valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms, subject to bankruptcy, insolvency, or other laws affecting creditors' rights generally from time to time in effect and general equity principles.

H.  There is as of the date of this Agreement no pending or (to the Seller's knowledge) threatened litigation, adverse claim or action of any kind or nature which, if decided against the Seller, would materially and adversely effect the Seller's ability to perform its obligations pursuant to this Agreement, and the Seller will provide Provident Funding with written notice of any such litigation, claim or action which arises in the future and which could have such an affect within thirty (30) days after the Seller becomes aware of same.

I.  The Seller is not the subject of any proceeding or action under any bankruptcy, insolvency or similar law, nor is the Seller the subject of any assignment for the benefit of creditors, conservatorship or receivership, or insolvent.

4.02   **Representations and Warranties of the Seller with Respect to Mortgage Loans, Notes and Mortgage Loan Documents.**

A.  The Seller has sole, full and complete title to each Mortgage Loan and each Mortgage Loan Document relating thereto to be sold or transferred to Provident Funding hereunder, free and clear of all liens, claims or other interests of any other Person; and the Seller has full corporate power and authority to sell, assign, transfer and convey the same to Provident Funding as provided herein.

19

**B.**   Each Mortgage Loan sold hereunder, including the related Mortgage Note, Mortgage and other Mortgage Loan Documents, is genuine, valid, binding and enforceable and is not in default in any respect; and is and will continue to be free from claims, defenses, set-off and counterclaims arising because of any act or omission of the Seller.

**C.**   The Seller acknowledges that all signatures, names, addresses, amounts and other statements of facts, including descriptions of property, appearing on the credit application and other Mortgage Loan Documents relating to each Mortgage Loan are true and correct and the borrowers named thereon were of majority age, and had, to the best of the Seller's knowledge, the legal capacity to enter into the applicable Mortgage Loan.

**D.**   The Mortgaged Property securing each Mortgage Loan is insured against all forms of casualty, including without limitation, fire, flood, wind, earthquake, and coverage under each applicable insurance policy contains a lender's loss payable endorsement naming the Seller and its successors and assigns as a loss payee and providing the Seller and its successors and assigns with coverage in the amounts required by Fannie Mae standards.

**E.**   The Seller acknowledges that Provident Funding has relied and will rely upon the information, records and documents contained in the Mortgage File for each Mortgage Loan purchased by Provident Funding hereunder and the Seller specifically warrants that each such Mortgage File includes, without limitation, all material backup documentation, investigation materials, and payment records in the Seller's possession.

**F.**   With respect to each Mortgage Loan at the time of its purchase by Provident Funding hereunder, such Mortgage Loan is not in default (including, without limitation, such Mortgage Loan is not delinquent more than thirty (30) days), the Seller has no knowledge of any existing, threatened or impending disputes or litigation involving such Mortgage Loan, the borrower thereunder, or the related Mortgaged Property, and no settlement, payment, or compromise has been made with respect thereto.

20

G.   All proceeds of the closing of each Mortgage Loan have been properly and fully disbursed.

H.   There are no verbal or written agreements, instruments, or understandings with the borrower or, to the Seller's knowledge, any third party in connection with any Mortgage Loan purchased by Provident Funding hereunder, other than those contained in the Mortgage Loan Documents submitted to Provident Funding in accordance with the terms of this Agreement.

I.   The appraisal of each Mortgaged Property shall be signed by a qualified appraiser, duly appointed by the Seller, and shall satisfy the Underwriting Guidelines.   All appraisers used by the Seller must be licensed or certified in accordance with applicable state and federal law.

J.   Each Mortgage Loan purchased by Provident Funding hereunder will be in full compliance with all applicable federal, state and local laws, rules and regulations, including without limitation, the Real Estate Settlement Procedures Act, the Equal Credit Opportunity Act, the Flood Disaster Protection Act, the Truth-in-Lending Act, the Gramm-Leach-Bliley Privacy Act, the Patriot Act, all regulations issued pursuant to each of the foregoing, and all laws, rules and regulations relating to usury.   Each such Mortgage Loan shall be in compliance with all applicable laws, rules and regulations concerning predatory lending and shall not be classified as "high cost," "threshold," "covered" or "predatory" under any such law, rule or regulation.   No such Mortgage Loan shall be in violation of, or classified as a high cost loan under, the Home Ownership and Equity Protection Act of 1994, as amended.

K.   There shall be a paid-up title insurance policy with respect to the Mortgaged Property relating to each Mortgage Loan in effect at the time such Mortgage Loan is purchased by Provident Funding hereunder, in an amount at least equal to the original principal balance of such Mortgage Loan.   Each such policy and the company issuing such policy must be satisfactory to Provident Funding in its sole but reasonable discretion.

L.   Each Mortgage Loan and all related Mortgage Loan Documents satisfy the Underwriting Guidelines.

21

M.    Each Assignment of Mortgage (for each Mortgage Loan that is not a MERS Mortgage Loan) delivered by the Seller pursuant to this Agreement is the valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms.

4.03    **Survival of This Part:** The representations and warranties set forth in this Article IV and the rights of Provident Funding under this Article IV shall survive termination of this Agreement and the sale of each Mortgage Loan to Provident Funding, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination of, or failure to examine, any Mortgage File by Provident Funding.

## V    COVENANTS OF SELLER AND PROVIDENT FUNDING

5.01    **Furnishing Information.** From the date hereof, and until the satisfaction of all the Seller's obligations hereunder, the Seller shall at its expense furnish to Provident Funding such documents and information as Provident Funding may reasonably request in writing in connection with this Agreement and the transactions described herein or contemplated hereby, and shall promptly notify Provident Funding in writing of any matter arising or discovered at any time that would materially alter or amend the information set forth in any document or other information previously delivered to Provident Funding, or that would render any representation or warranty made hereunder untrue as of the date such representation or warranty was made or deemed made. Upon receipt of Provident Funding's written request, the Seller will provide Provident Funding with copies of all licenses, permits, approvals, and renewals thereof, and additions thereto, which demonstrate the Seller's authority to conduct the business contemplated by this Agreement, and an Officer Certificate (satisfactory in form and content to Provident Funding in the exercise of its reasonable discretion) listing the names of all the Seller's offices and employees authorized to execute documents or otherwise to perform any act required to be performed by the Seller under the terms of this Agreement.

5.02    **Indemnification by the Seller.** In addition to the Seller's obligations under Article III hereof, the Seller agrees to indemnify and hold Provident Funding and its partners, shareholders, directors, officers, agents, successors and assignees harmless from, and on demand by Provident Funding, to pay Provident Funding

22

for, any actual, direct and out-of-pocket damages, losses, costs or expenses of any nature whatsoever (including reasonable attorney's fees and costs of suit) to the extent that the same are incurred by or asserted against Provident Funding, its partners, shareholders, directors, officers, agents, successors or assignees and are attributable to any intentional or negligent acts or omissions by the Seller, its partners, shareholders, officers, directors, employees, agents, and representatives or any breach by the Seller of any representation, warranty, covenant or obligation of the Seller hereunder, which breach materially and adversely affects the value or marketability of one or more Mortgage Loans (or Provident Funding's interest therein). The indemnification contained herein shall survive the termination of this Agreement and shall not be affected by Provident Funding's taking of any of the following actions with or without notice to the Seller: (i) liquidation, repayment, retirement, sale or resale of any Mortgage Loan; (ii) foreclosure of any Mortgage Loan; (iii) sale or resale of any Mortgaged Property; or (iv) any other action or inaction by Provident Funding.

**5.03    Preservation of Financial Condition, Powers and Conduct.** During the term hereof, the Seller and Provident Funding each shall preserve its respective corporate existence and charter and all necessary licenses, permits and franchises in good standing and shall comply with all laws and regulations, act with prudence and generally in a manner consistent with the highest industry standards. It is specifically agreed that the Seller shall be required to continue satisfying the qualifications set forth in the Provident Funding Correspondent Web Site throughout the term of this Agreement and shall notify Provident Funding immediately if it no longer satisfies any such qualification.

**5.04    Books and Records.** The Seller agrees that, upon receipt of Provident Funding's written request, and subject to the Seller's receipt of a confidentiality agreement satisfactory to the Seller in the exercise of its reasonable discretion, the Seller shall cause a certified public accountant, at the Seller's expense, to provide Provident Funding, no later than 120 days after the close of each fiscal year of the Seller which ends during the term of this Agreement, with audited or reviewed financial statements of its financial condition and results of operations as of and for each such fiscal year. The Seller shall keep records satisfactory to Provident Funding (in the exercise of Provident Funding's reasonable discretion) pertaining to each Mortgage Loan and shall permit inspection thereof, and of all of its other books and records as they pertain to Mortgage Loans sold to Provident Funding hereunder, by Provident Funding at all reasonable times upon

23

reasonable written notice. Any such inspection undertaken by Provident Funding will be conducted so as to not unreasonably interfere with the business of the Seller.

In addition, the Seller shall, promptly following Provident Funding's request therefore from time to time, and subject to the Seller's receipt of a confidentiality agreement satisfactory to the Seller in the exercise of its reasonable discretion, provide to Provident Funding unaudited statements of the Seller's financial condition and results of operations as of and for the most recent calendar quarter.

5.05    **Requirement of Fidelity Insurance and Errors and Omissions Insurance Coverage.** During the term of the agreement the Seller shall maintain a Fidelity Bond and Errors and Omissions Insurance Coverage in forms and amounts required to satisfy any applicable requirements of Fannie Mae relating to its sellers. Seller shall notify Provident Funding promptly in the event of changes to the insurance coverage it maintains and will provide copies of such policies upon request.

5.06    **Collections.** The Seller will not accept collections, institute foreclosure proceedings or modify the terms of any Mortgage Loan on or after the date such Mortgage Loan has been purchased by Provident Funding hereunder, unless requested in writing to do so by Provident Funding. After the purchase of a Mortgage Loan by Provident Funding hereunder, the Seller shall hold for the sole benefit of Provident Funding and promptly deliver to Provident Funding in the form received all cash, notes, acceptances, checks, drafts, money orders, Insurance Proceeds, Condemnation Proceeds and instruments of payment relating to such Mortgage Loan that may come into the possession of the Seller from time to time.

5.07    **Endorsements and Other Documents.** The Seller agrees, upon the request of Provident Funding from time to time, to endorse to Provident Funding any notes, acceptances, checks, drafts, money orders, Insurance Proceeds, Condemnation Proceeds and instruments of payment relating to each Mortgage Loan that has been purchased by Provident Funding hereunder, and to execute such releases, discharges, satisfactions and any and all other documents requested by Provident Funding (in the exercise of its reasonable discretion) in connection with such Mortgage Loan.

24

**5.08** **Post-Purchase Audits.** In addition to the pre-purchase audit of each Mortgage Loan contemplated by Section 2.06, Provident Funding also will conduct a post-purchase audit of such Mortgage Loans as Provident Funding may choose from time to time.

In the event that such post-purchase audits indicate that errors and exceptions have occurred with respect to fifteen percent (15%) or more of the Mortgage Loans purchased during any one calendar month, Provident Funding shall have the option to suspend the Seller's rights under this Agreement or may terminate this Agreement at any time. In addition to the foregoing, in the event all such errors and exceptions relating to all such Mortgage Loans are not cured within thirty (30) days to the satisfaction of Provident Funding, and such errors and exceptions constitute a breach of any applicable representation or warranty of the Seller hereunder, which breach materially and adversely affects the value or marketability of the related Mortgage Loans (or Provident Funding's interest therein), in its sole discretion, Provident Funding may require the Seller to repurchase such Mortgage Loans pursuant to Article VI.

**5.09** **Proprietary Information.** In the course of performing this Agreement, the Seller may utilize proprietary information owned by Provident Funding. In addition, the Seller will have access to and become acquainted with what Provident Funding and the Seller acknowledge are trade secrets and confidential information of Provident Funding, including policies and procedures, information and data concerning Provident Funding and its affiliates, the identity of Provident Funding's investors and other customers, and knowledge of the financial condition, needs and requirements of such investors and customers, all of which Provident Funding has developed at its expense and which is proprietary to Provident Funding (hereafter called "Provident Funding Proprietary Information"). The Seller shall not provide access to Provident Funding's Proprietary Information to anyone who is not an employee of the Seller, disclose any such Provident Funding Proprietary Information, or directly or indirectly cause any of the foregoing to be disclosed, sold, or transferred to, or utilized in any way by, any other Person. Furthermore, the Seller agrees that Provident Proprietary Information shall be used by it and its authorized employees solely for the business purpose of performing its obligations under this Agreement, that Provident Funding is the sole owner thereof and that the Seller has no right, title, or interest therein. Upon termination of this Agreement, the Seller shall promptly deliver possession of all such Provident Funding Proprietary Information to

Provident Funding and no longer make any use whatsoever of any of the foregoing. The provisions of this Section 5.08 shall be enforceable by a court order of specific performance or injunction should the Seller fail to comply with the terms hereof. In addition, in the event the Seller fails to comply with the terms hereof, Provident Funding shall be entitled to exercise all such additional rights and remedies it may have pursuant to this Agreement or applicable law. Notwithstanding anything herein to the contrary, it is understood and agreed that "Provident Funding Proprietary Information" shall not include any information which: (a) is previously known to the Seller; (b) is in or enters the public domain through no wrongful act of the Seller; (c) is rightfully received from a third party without restriction and without breach of this Agreement; (d) is furnished to a third party by Provident Funding without similar restrictions on such party's rights; (e) is approved for release by Provident Funding's written authorization; or (f) is required to be disclosed by order of a governmental agency, legislative body or a court of competent jurisdiction.

5.10    **Further Assurances.** At any time and from time to time each party hereto shall take such further action as the other party hereto may reasonably believe to be necessary or desirable to carry out the intent of this Agreement, including, without limitation, the execution and delivery of such agreements, documents, certificates, instruments and notifications as may be necessary to evidence the vesting in such other party of its rights as contemplated by this Agreement.

5.11    **Provident Funding's Covenants.** Provident Funding hereby covenants and agrees that, with respect to each Mortgage Loan, at all times following the applicable Funding Date, Provident Funding shall service such Mortgage Loan in accordance with those mortgage servicing practices of prudent lending institutions that service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located.

VI      **SELLER'S REPURCHASE OBLIGATIONS**

6.01    **Repurchase Obligation:** The Seller agrees to repurchase any Mortgage Loan sold to Provident Funding pursuant to this Agreement within ten (10) business days of receipt of written notice from Provident Funding of any of the following events or circumstances:

A.   Any breach by the Seller of any representation or warranty under this Agreement; provided, however, that (i) the Seller shall have been given written notice of such breach and shall have failed to cure it to Provident Funding's satisfaction within thirty (30) days following the Seller's receipt of such notice, and (ii) such breach materially and adversely affects the value and/or marketability of the related Mortgage Loan or Mortgage Loans (or Provident Funding's interest therein).

B.   Any investor to whom Provident Funding shall have sold or transferred such Mortgage Loan shall demand its repurchase by Provident Funding or shall demand indemnification with respect to potential losses on such Mortgage Loan from Provident Funding due to inaccuracy of any representation or warranty made by the Seller with respect to such Mortgage Loan or any loan quality defect which adversely affects such investor's interests with respect to such Mortgage Loan or any default by the Seller hereunder which adversely affects such investor's interests with respect to such Mortgage Loan;

C.   Any failure by a Mortgagor to make the Mortgagor's first, second, or third Monthly Payment with a due date subsequent to the Purchase Date that is not received by the Purchaser, whether from the mortgagor directly or forwarded by the seller if the mortgagor has submitted the payment to the seller, by the last day of the month in which such payment is due, the seller shall, at the Purchaser's option, and no later than five (5) business days after the receipt of notice from the purchaser, repurchase such mortgage loan at the repurchase price; however, that (i) such failure is not attributable to an issue involving the transfer of servicing from the Seller to Provident Funding, and (ii) the Seller receives written notice of such failure by no later than ninety (90) days following the date of such delinquency or the date that Provident Funding is made away of such delinquency by any successors or assignees, if later than the date of such delinquency; or

D.   The Seller is obligated to repurchase such Mortgage Loan pursuant to the provisions of Section 5.08 or any other provision of this Agreement

Subject to the terms of Section 6.01 C above, there is no deadline by which Provident Funding must invoke its rights pursuant to this Section 6.01 with respect to any Mortgage Loan or Loans.

27

**6.02**    **Repurchase Price:**  The price the Seller shall pay to Provident Funding for each Mortgage Loan that the Seller is obligated to repurchase pursuant to Section 6.01, notwithstanding the representations and warranties made by any third party underwriter or service provider with respect to such Mortgage Loan, shall equal the sum of:

    **A.**    The original Purchase Price of such Mortgage Loan, including without limitation the Premium, if any (but in any event not less than par) less the sum of all principal reductions of such Mortgage Loan after the original purchase thereof by Provident Funding;

    **B.**    Plus all accrued and unpaid interest on such Mortgage Loan from the Purchase Date of such Mortgage Loan through and including the first day of the month following the month during which the repurchase of such Mortgage Loan is made by the Seller pursuant to this Article III;

    **C.**    Plus all reasonable, out-of-pocket expenses, including but not limited to, reasonable fees and expenses of counsel, incurred by Provident Funding in enforcing the Seller's obligation to repurchase such Mortgage Loan;

    **D.**    Plus the entire "Final SRP" as shown in the Lock Confirmation relating to such Mortgage Loan.

**6.03**    **Return of Notes:**  Upon each such repurchase of a Mortgage Loan by the Seller pursuant to this Article VI, Provident Funding shall promptly endorse the Mortgage Note (without recourse), shall assign the related Mortgage (without recourse and in recordable form) to the Seller (or its designee), and shall promptly take any and all other actions necessary or appropriate to vest title in the applicable Mortgage Loan in the Seller (or its designee).

**6.04**    **No Waiver:**  Except to the extent that Provident Funding acknowledges in writing a defect pertaining to a Mortgage Loan and purchases such Mortgage Loan notwithstanding such defect, Provident Funding's prior knowledge of any fact, at any time, concerning any Mortgage Loan shall neither impair Provident Funding's rights nor constitute a waiver of the Seller's obligations hereunder. In the event the Seller does not comply with the terms of any request made hereunder to indemnify Provident Funding or repurchase any Mortgage Loan, Provident Funding may, in addition to such other rights and remedies as may be specified

herein or available under law, suspend or terminate all of its obligations hereunder with or without notice.

6.05    **Survival of This Part:** The rights of Provident Funding under this Article VI shall survive termination of this Agreement and the sale of each Mortgage Loan to Provident Funding, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or Provident Funding's examination or failure to examine any Mortgage File.

## VII    COMPENSATION AND FEES

7.01    **Documentation Review Fee.** If specified in the applicable Purchase Price and Terms Agreement, the Seller agrees to pay to Provident Funding a fee for each Mortgage Loan purchased by Provident Funding hereunder (the "Documentation Review Fee"). The Documentation Review Fee shall be payable upon the purchase of each Mortgage Loan purchased by Provident Funding hereunder and shall be in the amount specified in the Purchase Price and Terms Agreement.

7.02    **Payment of Purchase Price.** The Purchase Price for each Mortgage Loan purchased by Provident Funding hereunder shall be in the amount specified in the related Purchase Price and Terms Agreement and shall be wired to the address specified in such Purchase Price and Terms Agreement.

## VIII    Miscellaneous

8.01    **Notices.** All notices to be given in connection with this Agreement shall be in writing and delivered to a party at its respective address appearing below, or at such other address which may be designated in writing by such party pursuant to the provisions hereof, by personal delivery, e-mail, facsimile transmission, overnight delivery, telefax (with telephonic confirmation of receipt) or mail. Each such notice should be effective upon receipt.

If to Provident Funding:

Provident Funding Associates, L.P.
1633 Bayshore Highway, Suite 155
Burlingame, CA 94010
ATTN: Compliance Officer - Correspondent Division
Telephone:_____

29

Facsimile: _____

E-Mail: _____

**If to the Seller:**

Seller Name: _____

Address: _____

City, State, ZIP: _____

Attention To: _____

Telephone: _____

Facsimile: _____

E-mail: _____

**8.02    Independent Contractors.**  This Agreement shall not be deemed to constitute the parties hereto as partners or joint venturers, nor shall any party be deemed to be the agent of the other party. The parties hereto agree that the Seller is neither an agent nor an employee of Provident Funding, nor of any parent or other affiliate of Provident Funding, and may not be construed as such by reason of this Agreement. It is agreed that the Seller is an independent contractor, and is expressly prohibited from holding itself out as an agent, representative or employee of Provident Funding, or of any parent or other affiliate of Provident Funding. Without limiting the foregoing, the Seller shall not represent to any borrower or other person that it has any authority to commit Provident Funding to make, fund or purchase any Mortgage Loan.

**8.03    Entire Agreement.**   This Agreement (including the Provident Funding Correspondent Web Site) contains the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements, arrangements, proposals or understandings, written or oral, by or between the parties hereto with respect to the subject matter hereof.

**8.04    Choice of Law.**  This Agreement shall be construed in accordance with the laws of the State of California (but not including the choice of law rules thereof).  The invalidity or unenforceability of any provision or provisions of this Agreement shall not affect the validity or enforceability of any other provision hereof. Any suit or proceeding relating to this Agreement shall be brought in the federal or state

30

courts located in, California, which courts shall have sole and exclusive subject matter and other jurisdiction in connection with such suit or proceeding, and venue shall be appropriate for all purposes in such courts.

8.05    **Attorney's Fees.** In the event of a dispute between the parties hereto or their successors, arising out of this Agreement, the prevailing party shall be entitled to recover costs, including reasonable attorney's fees actually incurred in connection therewith.

8.06    **Successors and Assigns.** This Agreement shall bind and benefit the Seller and Provident Funding and their respective successors and assigns; provided, however, that neither party shall have the power or right to assign this Agreement or any of its rights or obligations hereunder without the prior written consent of the other party; further provided, however, that Provident Funding shall have the right to assign its rights and obligations hereunder to any of its affiliates without the consent of the Seller.

8.07    **Miscellaneous.** A party's omission or delay in exercising any of its optional or absolute rights or remedies under this Agreement shall not constitute a waiver by such party, nor operate to bar such party from the exercise of any such rights or remedies. Any waiver by any party of any default shall not operate as a waiver of any other or subsequent default. All rights and remedies provided to any party herein are not exclusive of any other rights or remedies at law or equity, are cumulative and not alternative, and may be exercised by such party simultaneously or in such order as such party deems to be in its best interests. Captions and paragraph headings are for convenience only.

8.08    **No Solicitation.** The Seller cannot seek to refinance any Mortgage Loan purchased by Provident Funding hereunder for a period of 36 months after the Purchase Date of such Mortgage Loan. In addition to the remedies described in Section III and elsewhere herein, in the event the Seller breaches this covenant, Provident Funding shall be entitled to terminate this Agreement immediately upon written notice to the Seller and to pursue all such remedies as may be available at law or in equity. Notwithstanding the foregoing, it is understood and agreed that promotions undertaken by the Seller or any affiliate of the Seller, which promotions are directed to the general public at large, or segments thereof, provided that no segment shall consist primarily of the Mortgagors under the Mortgage Loans, including, without limitation, mass mailing based on

31

commercially acquired mailing lists, newspaper, radio, television and/or Internet advertisements, shall not constitute solicitation under this Section 8.08.

8.09    **Termination.** Either party may terminate this Agreement at any time in its sole discretion. Termination shall not relieve Provident Funding of the obligation to purchase Mortgage Loans with respect to which the parties have entered into a Purchase Price and Terms Agreement, and shall not relieve the Seller of its obligations to sell to Provident Funding Mortgage Loans with respect to which the parties have entered into a Purchase Price and Terms Agreement. Further, termination of this Agreement by either party shall not affect the rights, liabilities and obligations of the parties as to Mortgage Loans previously purchased under this Agreement.

8.10    **Not Exclusive.** The Seller acknowledges that Provident Funding may enter into other agreements or understandings with other parties for the purchase, funding or origination of loans in the areas in which the Seller presently conducts or may conduct business, that Provident Funding may seek to originate, fund and purchase loans in a manner that may compete with the Seller, and that this Agreement shall not be deemed to restrict or impede such actions by Provident Funding in any way.

[Signatures appear on following page]

**IN WITNESS WHEREOF**, each of the undersigned has caused this Agreement to be duly executed by its duly authorized representative as of the date first above written.

**Provident Funding**                                        **"Seller"**

**PROVIDENT FUNDING ASSOCIATES, L.P.**         **VIRTUAL   BANK,   A   DIVISION   OF LYDIAN PRIVATE BANK**

By:                                                         By: _____
      Paul Paulsson                                  (Signature)
                                                            Printed: L. Trevor Rozowsky

Its:   **Vice President**                                   Its: *Chief Executive Officer*
                                                                 (Title)

Attested:                                                   Attested:

By:                                                         By: *Linda Spray*
    Michael Proctor                                      (Signature)
                                                            Printed: *Linda Spray*

Its:   **Director, Correspondent Lending**                  Its: *Vice President*
                                                                 (Title)

PF Correspondent Seller Agreement                    33                    Rev. 11.02/2006

## PURCHASE PRICE AND TERMS AGREEMENT

This **PURCHASE PRICE AND TERMS AGREEMENT** (the "Purchase Price and Terms Agreement"), dated _____, 200__, between _____, a _____ corporation, located at _____ (the "Seller") and Provident Funding Associates, L.P. ("Provident Funding") is made pursuant to the terms and conditions of that certain Correspondent Seller Agreement (the "Agreement") dated as of_____, 2006, between the Seller and Provident Funding, the provisions of which are incorporated herein as if set forth in full herein, as such terms and conditions may be modified or supplemented hereby. All initially capitalized terms used herein unless otherwise defined shall have the meanings ascribed thereto in the Agreement.

Provident Funding hereby purchases from the Seller and the Seller hereby sells to Provident Funding, all of the Seller's right, title and interest in and to the Mortgage Loans described on the Mortgage Loan Schedule annexed hereto as Schedule I, pursuant to and in accordance with the terms and conditions set forth in the Agreement, as same may be supplemented or modified hereby. Hereinafter, the Seller shall interim service the Mortgage Loans for the benefit of Provident Funding and all subsequent transferees of the Mortgage Loans pursuant to and in accordance with the terms and conditions set forth in the Agreement.

1.     Definitions

For purposes of the Mortgage Loans to be sold pursuant to this Purchase Price and Terms Agreement, the following terms shall have the following meanings:

Custodian:                                    _____

Cut-off Date:                                 _____ [  ], 2006

Funding Date:                                 _____, 2006

Mandatory Commitment Amount:                  _____

Package Due Date:                             _____

Pair Off Fee Assessment Date:                 _____

Pool Tolerance:                               _____

Purchase Price Percentage:                    [  ]%

Purchased Principal Balance
(Aggregate, as of the Cut-Off Date):          $[  ]

Servicing Transfer Date:                      _____, 2006, to Purchaser's designee, _____

Underwriting Guidelines                       First lien, adjustable rate, conventional mortgage loans

Weighted Average
Mortgage Loan Note Rate:                      [  ]%

34

**Wire Transfer Instructions for Seller:**

**Additional Closing Conditions:**

In addition to the conditions specified in the Agreement, the obligation of each of the Seller and Provident Funding is subject to the fulfillment, on or prior to the applicable Funding Date, of the following additional conditions: [None].

**Additional Loan Documents:**

In addition to the contents of the Mortgage File specified in the Agreement, the following documents shall be delivered with respect to the Mortgage Loans:  [None]

**Additional Representations and Warranties:**

In addition to the representations and warranties set forth in the Agreement, as of the date hereof, the Seller makes the following additional representations and warranties with respect to the Mortgage Loans:  [None]

Except as modified herein, the Agreement shall remain in full force and effect as of the date hereof.

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

_____

By:_____
Name:_____
Title:_____

PROVIDENT FUNDING ASSOCIATES, L.P.

By:_____, General Partner

By:_____
Name: _____
Title: _____

35

Rev. 11/02/2006

## ADDENDUM A

## CORRESPONDENT SELLER AGREEMENT

Provident Funding herby agrees to amend the following sections of the **CORRESPONDENT SELLER AGREEMENT** between **Provident Funding Associates L.P.** ("Provident Funding) and **Lydian Private Bank**, a federal savings bank organized under the laws of the United States (the "Seller") as follows:

**Section I DEFINITIONS**

**Appraised Value:** With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by an appraisal made for the originator of the related Mortgage Loan at the time of origination of such Mortgage Loan by an appraiser who meets the minimum appraisal requirements of FNMA or FHLMC, or (ii) the purchase price (plus added value of documented improvements) of such Mortgaged Property, if purchased by the Mortgagor within one (1) year prior to the origination of such Mortgage Loan.

**Bailee Letter:** A writing from a Warehouse Lender to Provident Funding, satisfactory in form and content to Provident Funding in its sole discretion, which relates to a Mortgage Loan to be sold to Provident Funding hereunder and which contains a release, upon the occurrence of certain events, of all of such Warehouse Lender's right, title and interest (including without limitation security interests) in and to such Mortgage Loan.

**Cut-Off Date:** With respect to each pool of Mortgage Loans acquired hereunder, the third Business Day prior to the related Funding Date, or such other date agreed to by the Seller and Provident Funding and set forth in the related Purchase Price and Terms Agreement.

**Mortgage File:** The file of documents pertaining to a particular Mortgage Loan, which file contains all documents required by the Provident Funding Correspondent Web Site, including without limitation, the related original Mortgage Note, Assignment of Mortgage and Bailee Letter (if applicable).

**Mortgage Loan Documents:** The Mortgage Note, the Mortgage and the other documents pertaining to a Mortgage Loan required to be a part of the related Mortgage File.

**Case:** Remove definition and term.

**Section II PURCHASE AND SALE OF MORTGAGE LOANS**

**2.02 Section C:** Removed

**2.02 Section D:** Removed

**2.02 Section E:** The Seller shall be responsible for the proper closing of each Mortgage Loan. The Seller shall, prior to the Servicing Transfer Date, interim service the Mortgage Loans in accordance in all material respects with prudent servicing practices generally employed by servicers of mortgage loans secured by property in the same geographic area as the Mortgaged Property.

**2.02 Section G:** A Private Mortgage Insurance Policy will be required on all Mortgage Loans having greater than an 80% Loan-to-Value Ratio. Each such Private Mortgage Insurance Policy must be satisfy in form and content the guidelines of Fannie Mae, and issued by a Private Mortgage Insurer which satisfies the guidelines of Fannie Mae.

**Section III POST SETTLEMENT OBLIGATION**

**3.03 Rights to Mortgage Insurance:** Mortgage insurance required on all Mortgage Loans purchased by Provident Funding hereunder must be purchased from a Private Mortgage Insurer satisfying the guidelines of Fannie Mae. In each case where such Private Mortgage Insurer transfers all or any portion of such insurance to any affiliate or subsidiary of the Seller, the Seller shall cause such affiliate or subsidiary to transfer such insurance, together with all compensation received by such affiliate or subsidiary from such Private Mortgage Insurer with respect thereto, to Provident Funding's captive mortgage reinsurance company upon Provident Funding's purchase of the related Mortgage Loan hereunder.

**3.02    Trailing Documents:** Seller is to provide to Provident Funding the following documents, if not provided with original collateral package, within one hundred-eighty (180) days after the Purchase Date, or two hundred-seventy (270) days after the Purchase Date if documentation is provided by the seller evidencing that such delay is the sole result of the applicable County Recorders Office:

- Original Final Title Policy
- Original Recorded Mortgage/Deed of Trust
- Original Recorded Assignment (for each Mortgage Loan that is not a MERS Mortgage Loan)
- Certified Copy of the Final HUD-1

To the following address with a cover page listing borrower name, loan number, and document(s) included in each shipment;

     Trailing Documents Supervisor
     1235 North Dutton Avenue, Suite E
     Santa Rosa, CA 95401

Failure to deliver the Original Final Title Policy, the Original Recorded Mortgage/Deed of Trust, and/or the Original Recorded Assignment (for each Mortgage Loan that is not a MERS Mortgage Loan) within the time period required will result in a one-time fee of $50.00 per document; upon receipt of such fee, Provident Funding shall thereafter be responsible for obtaining the applicable document.

## Section IV REPRESENTATIONS AND WARRANTIES OF THE SELLER

**4.02 Section D:** The Mortgaged Property securing each Mortgage Loan is insured against all forms of casualty as required by Fannie Mae standards, including without limitation, fire, flood, wind, earthquake, and coverage under each applicable insurance policy contains a lender's loss payable endorsement naming the Seller and its successors and assigns as a loss payee and providing the Seller and its successors and assigns.

**4.02 Section K:** There shall be a paid-up title insurance policy with respect to the Mortgaged Property relating to each Mortgage Loan in effect at the time such Mortgage Loan is purchased by Provident Funding hereunder, in an amount at least equal to the original principal balance of such Mortgage Loan. Each such policy and the company issuing such policy must satisfy the guidelines of Fannie Mae.

## Section VI SELLER'S REPURCHASE OBLIGATIONS

**6.01 Section B:** Any investor to whom Provident Funding shall have sold or transferred such Mortgage Loan shall demand its repurchase by Provident Funding or shall demand indemnification with respect to potential losses on such Mortgage Loan from Provident Funding due to inaccuracy of any representation or warranty made by the Seller with respect to such Mortgage Loan or the finding of any loan quality defect resulting from the acts or omissions of the Seller or any Originator, which causes the Mortgage Loan to violate applicable GSE guidelines or any default by the Seller hereunder which adversely affects such investor's interests with respect to such Mortgage Loan;

[Signatures appear on following page]

IN WITNESS WHEREOF, each of the undersigned has caused this Addendum to the Correspondent Seller Agreement to be duly executed by its duly authorized representative as of the date first above written.

**Provident Funding**                                    **"Seller"**

**PROVIDENT FUNDING ASSOCIATES, L.P.**        VIRTUAL BANK, A DIVISION OF LYDIAN PRIVATE BANK

By: _____                By: _____
    **Paul Paulson**                                  (Signature)
                                            Printed: _I. Trevor Korowsky_

Its:    **Vice President**                    Its: _Chief Executive Officer_
                                                       (Title)

Attested:                                    Attested:

By: _____                By: _Linda Spray_
    **Michael Proco**                                (Signature)
                                            Printed: _Linda Spray_

Its:    **Director, Correspondent Lending**   Its: _Vice President_
                                                       (Title)

# EXHIBIT B

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2     Including Professional Corporations
   ROBERT J. STUMPF, JR., Cal. Bar No. 72851
3  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
4  Telephone:   415-434-9100
   Facsimile:    415-434-3947
5  rstumpf@sheppardmullin.com

6  Attorneys for Defendants LYDIAN PRIVATE
   BANK, VIRTUALBANK, A DIVISION OF
7  LYDIAN PRIVATE BANK



**FILED**
SAN MATEO COUNTY

16 10 2011

Clerk of the Superior Court
By _____
DEPUTY CLERK

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN MATEO

10

11

12  | PROVIDENT FUNDING ASSOCIATES, | Case No. CIV 495700 |
    | L.P., | |

13  | | **ANSWER TO COMPLAINT FOR** |
    | Plaintiff, | **BREACH OF WRITTEN CONTRACT** |

14  | | |

15  | v. | |

16  | LYDIAN PRIVATE BANK, | **Complaint Filed:  June 7, 2010** |
    | VIRTUALBANK, A DIVISION OF | |
17  | LYDIAN PRIVATE BANK, and Does 1 | |
    | through 20, | |

18  | Defendants. | |

19

20

21            Defendant Lydian Private Bank ("Lydian"), on behalf of itself and

22  Virtualbank, a division of Lydian, hereby answers the Complaint for Breach of Written

23  Contract filed by Provident Funding Associates, L.P. ("Provident") as follows:

24

25            1.      Answering paragraph 1, Lydian denies the allegations in this

26  paragraph for lack of information and belief to enable an answer to be made.

27

28

-1-

1    2.    Answering paragraph 2, Lydian admits the allegations in this
2  paragraph.

3

4    3.    Answering paragraph 3, Lydian denies the allegations in this
5  paragraph for lack of information and belief to enable an answer to be made.

6

7    4.    Answering paragraph 4, Lydian admits the allegations in this
8  paragraph.

9

10    5.    Answering paragraphs 5, 6, 7, and 8, Lydian alleges the sections of
11  the agreement Provident references in this paragraph speak for themselves, Lydian denies
12  the allegations in this paragraph to the extent they are inconsistent with such sections.

13

14    6.    Answering paragraph 9, Lydian denies the allegations in this
15  paragraph for lack of information and belief to enable an answer to be made.

16

17    7.    Answering paragraph 10, Lydian admits that during the period
18  October 2006 through August 2007, Lydian sold numerous mortgage loans to Provident
19  pursuant to the Agreement.  Lydian also admits that Provident has requested Lydian to
20  either repurchase such loans or pay Provident its alleged losses and that Lydian has not
21  done so.  Lydian is informed and believes that as to the Brown loan, the final DU findings
22  did not take into consideration a second mortgage that was closing concurrently and that
23  the appraisal was not updated; and Lydian affirmatively alleges neither of these things was
24  a material breach of any warranty or representation.  Lydian admits that as to the Gordon
25  loan, there was a Work Number in the loan file that indicated the borrower's employment
26  was "inactive as of 8/30/2006."  Lydian also admits that as to the Hayden loan, the loan
27  file raises questions about the stability of the borrower's income.  Except as otherwise set
28

-2-

ANSWER TO COMPLAINT FOR BREACH OF
                                                                           WRITTEN CONTRACT

1  forth, Lydian denies the allegations in this paragraph, either outright or for lack of

2  information and belief.

3

4         8.     Answering paragraph 11, Lydian admits that section 8.05 of the

5  Agreement speaks for itself, and Lydian denies the allegations in this paragraph to the

6  extent they are inconsistent with this section. Except as otherwise set forth above, Lydian

7  denies the allegations in this paragraph.

8

9         WHEREFORE, Lydian requests the Court to dismiss Provident's complaint

10  in its entirety and award Lydian its reasonable costs and attorney's fees, as well as such

11  other and further relief Court deems appropriate.

12

13  Dated: July 29, 2010

14                   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

15

16                   By   _____

17                            Robert J. Stumpf, Jr.;

18                       Attorneys for LYDIAN PRIVATE BANK,
                     VIRTUALBANK, A DIVISION OF LYDIAN
                        PRIVATE BANK.

19

20

21

22

23

24

25

26

27

28

-3-

ANSWER TO COMPLAINT FOR BREACH OF
WRITTEN CONTRACT

1          **VERIFICATION**

2   I have read the foregoing:

3   **ANSWER TO COMPLAINT FOR BREACH OF WRITTEN
    CONTRACT**

4

5   and know its contents.

6   ☐   I am a party to this action. The matters stated in the foregoing document are true of
        my own knowledge except as to those matters which are stated on information and
        belief, and as to those matters I believe them to be true.

7

8   ☒   I am the Executive Vice President/General Counsel and the authorized agent of
        Lydian Private Bank, a party to this action, and am authorized to make this
        verification for and on its behalf, and I make this verification for that reason.

9

10  ☒   I am informed and believe and on that ground allege that the matters stated in the
        foregoing documents are true.

11  ☐   The matters stated in the foregoing document are true of my own knowledge except
        as to those matters which are stated on information and belief, and as to those
12      matters I believe them to be true.

13  ☐   I am the Executive Vice President/General Counsel of Lydian Private Bank, a party
        to this action. Such party is absent from the county where such attorneys have their
14      offices, and I make this verification for and on behalf of that party for that reason. I
        am informed and believe and on that ground allege that the matters stated in the
15      foregoing document are true.

16          Executed on July 28, 2010 at Palm Beach Gardens, Florida.

17          I declare under penalty of perjury under the laws of the State of California
    that the foregoing is true and correct.

18

19

    Chris Boldman
20  Print Name                          Signature

21

22

23

24

25

26

27

28

-4-

ANSWER TO COMPLAINT FOR BREACH OF
                                                    WRITTEN CONTRACT

# EXHIBIT C

1   HOGAN LOVELLS US LLP
    NEIL R. O'HANLON, SBN 67018
2   1999 Avenue of the Stars, Suite 1400
    Los Angeles, CA 90067
3   Tel. (310) 785-4600
    Fax (310) 785-4601
4
    Attorneys for Plaintiff
5

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SAN MATEO

10

11  PROVIDENT FUNDING              )   Case No. CIV 495700
    ASSOCIATES, L.P.,              )
12                                 )   FIRST SUPPLEMENTAL COMPLAINT
                  Plaintiff,       )   FOR BREACH OF WRITTEN
13                                 )   CONTRACT
         vs.                       )
14                                 )
    LYDIAN PRIVATE BANK,           )
15  VIRTUALBANK, A DIVISION OF     )
    LYDIAN PRIVATE BANK, and Does  )
16  1 through 20,                  )
                                   )
17                Defendants.      )
                                   )
18

19       Plaintiff alleges:

20       1.   On June 7, 2010 Plaintiff Provident Funding Associates, L.P. ("Provident

21  Funding") filed its Complaint for Breach of Written Contract against Defendant Lydian

22  Private Bank ("Lydian") regarding a written Correspondent Seller Agreement (the

23  "Agreement"). Twenty-four loans sold by Lydian to Provident Funding were specifically

24  identified in the Complaint, which is incorporated herein by reference.

25       2.   Since the filing of the Complaint, the D'Angelo loan (Provident Funding loan

26  # 1116120176) was paid off in full and is no longer an issue in this lawsuit. Also, the

27  Gordon loan (Provident Funding loan # 1116101155) is no longer an issue in this lawsuit

28  due to the investor having rescinded its repurchase demand.

                                   1    FIRST SUPPLEMENTAL COMPLAINT FOR
                                        BREACH OF WRITTEN CONTRACT

3.    Since the filing of the Complaint, there has been a change in the status of the following loans:

(a)    The Cullen loan (Provident Funding loan # 1116101079) has been liquidated by short sale, resulting in damages to Provident Funding of no less than $68,485.00;

(b)    Provident Funding has made the investor whole on the Deweese loan (Provident Funding loan # 1116120150), resulting in damages to Provident Funding of no less than $138,438.67;

(c)    The real property formerly securing the Garrido loan (Provident Funding loan # 1116120356) has been liquidated, resulting in damages to Provident Funding of no less than $205,797.28;

(d)    Foreclosure has been completed on the Henry loan (Provident Funding loan # 1117031324), and the real property formerly securing the loan is being marketed for sale.

4.    Since the filing of the Complaint, Provident Funding has discovered that eleven additional mortgage loans sold to it by Lydian pursuant to the Agreement have defects that constitute material breaches of representations and warranties made by Lydian, consisting of the following:

(1)    The borrower on the Birch loan (Provident Funding loan # 1117031596) did not disclose that he was self-employed and also misrepresented his income. In August 2010 Provident Funding demanded that Lydian repurchase the loan, but Lydian failed to do so. The loan has been liquidated by short sale, resulting in damages to Provident Funding of no less than $105,263.71;

(2)    The income submitted for the Daniel loan (Provident Funding loan # 1117011159) was unreasonable based on the borrower's profession. In August 2010 Provident Funding demanded that Lydian repurchase the loan, but Lydian failed to do so. The unpaid principal balance of the loan is $240,078.81;

(3)    The income submitted for the Gutierrez loan (Provident Funding loan # 1117021730) was unreasonable based on the borrower's profession, and the length of the borrower's employment was misrepresented. In June 2010 Provident Funding demanded

1  that Lydian repurchase the loan, but Lydian failed to do so. The unpaid principal balance
2  is $411,872.88;

3        (4)   The mortgage securing the Holmes loan (Provident Funding loan
4  # 1117011013) was not in a first lien position as required. In July 2010 the investor
5  demanded that Provident Funding repurchase the loan, and Provident Funding demanded
6  that Lydian repurchase the loan, but Lydian failed to do so. The unpaid principal balance
7  is $331,881.96;

8        (5)   The income submitted for the Jaime loan (Provident Funding loan
9  # 1117080433) was overstated. In August 2010 Provident Funding demanded that Lydian
10  repurchase the loan, but Lydian failed to do so. The unpaid principal balance is
11  $347,227.25;

12        (6)   The file for the Nason loan (Provident Funding loan # 1117080377)
13  did not contain required tax returns to verify rental income or loss, documentation to
14  support assets required by the loan approval, and proof that the primary residence is owned
15  free and clear of any liens. In August 2010 Provident Funding demanded that Lydian
16  repurchase the loan, but Lydian failed to respond. The unpaid principal balance of the loan
17  is $120,635.68;

18        (7)   The file for the Okenwa loan (Provident Funding loan # 1117010858)
19  did not contain required tax returns to support claimed rental income. In May 2010 the
20  investor demanded that Provident Funding make it whole for its loss on the foreclosed loan
21  in the amount of $184,196.94, and Provident Funding demanded that Lydian pay the loss,
22  but Lydian failed to do so.

23        (8)   The borrower on the Ritchie loan (Provident Funding loan
24  # 1117060860) misrepresented his income and job title, and the loan is in foreclosure. In
25  August 2010 Provident Funding demanded that Lydian repurchase the loan, but Lydian
26  failed·to do so. The unpaid principal balance of the loan is $378,339.45;

27        (9)   The income calculation on the Robboy loan (Provident Funding loan
28  # 1117021689) was incorrect, and the loan file contained a paystub that did not meet

1  underwriting requirements. The loan has been foreclosed. In October 2010 Provident
2  Funding demanded that Lydian repurchase the loan, but Lydian failed to do so. The unpaid
3  principal balance of the loan at the time of foreclosure was $189,638.85;

4          (10)   The borrower on the Summers loan (Provident Funding loan
5  # 1117021840) failed to occupy the subject property as represented and agreed. In October
6  2010 the investor demanded that Provident Funding make it whole for its loss on the
7  foreclosed loan, and Provident Funding demanded that Lydian pay the loss, the amount of
8  which is not presently known;

9          (11)   The income and employment on the Henke loan (Provident Funding
10  loan # 1117080428) was falsified. The loan has been foreclosed. In October 2010
11  Provident Funding demanded that Lydian repurchase the loan, which had an unpaid
12  principal balance of $133,608.20 at the time of foreclosure.

13       WHEREFORE, Provident prays judgment as follows:

14     1.      For damages according to proof;

15     2.      For costs of suit, including such reasonable attorney's fees as may be allowed
16  by law;

17     3.      For such other, further, or different relief as the Court may deem proper.

18

19  DATED: October 22, 2010                    HOGAN LOVELLS US LLP

20

21                                      By Neil R. O'Hanlon
                                          Neil R. O'Hanlon
22
                                        Attorneys for Plaintiff
23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I have read the foregoing FIRST SUPPLEMENTAL COMPLAINT FOR BREACH OF WRITTEN CONTRACT and know its contents.

I am an Audit Supervisor of Provident Funding Associates, L.P., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on October 27, 2010 at Burlingame, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Harry Wong

5

FIRST SUPPLEMENTAL COMPLAINT FOR
BREACH OF WRITTEN CONTRACT

# EXHIBIT D

1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2       Including Professional Corporations
    ROBERT J. STUMPF, JR., Cal. Bar No. 72851
3   Four Embarcadero Center, 17th Floor
    San Francisco, California 94111-4109
4   Telephone:   415-434-9100
    Facsimile:   415-434-3947
5   rstumpf@sheppardmullin.com

6   MILLER & WRUBEL P.C.
      A Professional Corporation
7   JOEL M. MILLER (*pro hac vice* admission pending)
    570 Lexington Avenue
8   New York, New York 10022
    Telephone:   212-336-3500
9   Facsimile:   212-336-3555
    jmiller@mw-law.com
10
    Attorneys for Defendants LYDIAN PRIVATE
11  BANK, VIRTUALBANK, A DIVISION OF
    LYDIAN PRIVATE BANK
12

ENDORSED FILED
SAN MATEO COUNTY

MAR 2 3 2011

Clerk of the Superior Court
By _____ A. Degllantoni
            DEPUTY CLERK

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                      FOR THE COUNTY OF SAN MATEO

15

16
    PROVIDENT FUNDING ASSOCIATES,         Case No. CIV 495700
17  L.P.,
                                          **AMENDED ANSWER TO**
18              Plaintiff,                **COMPLAINT AND FIRST**
                                          **SUPPLEMENTAL COMPLAINT FOR**
19        v.                              **BREACH OF WRITTEN CONTRACT**

20  LYDIAN PRIVATE BANK,
    VIRTUALBANK, A DIVISION OF
21  LYDIAN PRIVATE BANK, and Does 1       [Complaint Filed:  June 7, 2010]
    through 20,                           Trial Date:  May 2, 2011
22
                Defendants.
23

24

25
              Defendant Lydian Private Bank ("Lydian"), on behalf of itself and
26
    Virtualbank, a division of Lydian, hereby answers the Complaint and First Supplemental
27

28

                                    -1-

1 | Complaint for Breach of Written Contract filed by Provident Funding Associates, L.P.
2 | ("Provident") as follows:

3

4 | **THE ORIGINAL COMPLAINT**

5 |      1.    Answering paragraph 1, Lydian denies the allegations in this
6 | paragraph for lack of information and belief to enable an answer to be made.

7

8 |      2.    Answering paragraph 2, Lydian admits the allegations in this
9 | paragraph.

10

11 |      3.    Answering paragraph 3, Lydian denies the allegations in this
12 | paragraph for lack of information and belief to enable an answer to be made.

13

14 |      4.    Answering paragraph 4, Lydian denies the allegations in this
15 | paragraph, except admits that Lydian and Provident entered into and executed a written
16 | Correspondent Seller Agreement (the "Agreement"), the terms of which speak for
17 | themselves.

18

19 |      5.    Answering paragraphs 5, 6, 7, and 8, denies the allegations in these
20 | paragraphs and avers that the terms of the Agreement speak for themselves.

21

22 |      6.    Answering paragraph 9, Lydian denies the allegations in this
23 | paragraph.

24

25 |      7.    Answering paragraph 10, Lydian denies the allegations in this
26 | paragraph and refers Provident to Lydian's affirmative defenses, except that Lydian admits
27 | that during the period October 2006 through August 2007, Lydian sold numerous
28 | mortgage loans to Provident pursuant to the Agreement, and that Provident has requested

-2-

1 | Lydian to either repurchase certain loans or pay Provident its alleged losses and that
2 | Lydian has not done so.

4 |         8.      Answering paragraph 11, Lydian denies the allegations in this
5 | paragraph, refers Provident to Lydian's affirmative defenses and avers that the terms of the
6 | Agreement speak for themselves.

8 | ## FIRST SUPPLEMENTAL COMPLAINT

9 |         1.      Answering paragraph 1 of the Supplemental Complaint, Lydian
10 | denies the allegations in this paragraph, except admits that Provident filed a Complaint for
11 | Breach of Written Contract against Lydian.

13 |         2.      Answering paragraph 2 of the Supplemental Complaint, Lydian
14 | denies the allegations in this paragraph for lack of information and belief to enable an
15 | answer to be made.

17 |         3.      Answering paragraph 3 of the Supplemental Complaint, Lydian
18 | denies the allegations in this paragraph and refers Provident to Lydian's affirmative
19 | defenses.

21 |         4.      Answering paragraph 4 of the Supplemental Complaint, Lydian
22 | denies the allegations in this paragraph and refers Provident to Lydian's affirmative
23 | defenses, except that Lydian admits that Provident has requested Lydian to either
24 | repurchase certain loans or pay Provident its alleged losses and that Lydian has not done
25 | so.

1       **AFFIRMATIVE DEFENSES**

2              As separate and distinct defenses to Provident's Complaint and First

3  Supplemental Complaint, Lydian, without conceding that it bears the burden of proof as to

4  any of the defenses and without admitting any of the allegations of the Complaint or First

5  Supplemental Complaint, alleges as follows:

6

7       **FIRST AFFIRMATIVE DEFENSE**

8       **(Failure To State A Claim)**

9       1.      Provident's claims are barred in whole or in part by Provident's failure to

10 state facts sufficient to constitute a cause of action against Lydian.

11

12      **SECOND AFFIRMATIVE DEFENSE**

13      **(Estoppel)**

14      2.      Provident's claims are barred in whole or in part by the doctrine of estoppel

15 based on Provident's failure to make claims against Lydian promptly after Provident

16 discovered, or should have discovered, the alleged breaches that appear on the face of the

17 documents Provident received, while the value of the loan collateral declined to Lydian's

18 detriment.

19

20      **THIRD AFFIRMATIVE DEFENSE**

21      **(Laches)**

22      3.      Provident's claims are barred in whole or in part by the doctrine of laches

23 based on Provident's failure to make claims against Lydian promptly after Provident

24 discovered, or should have discovered, the alleged breaches that appear on the face of the

25 documents Provident received, while the value of the loan collateral declined to Lydian's

26 detriment.

27

28

-4-

1

## FOURTH AFFIRMATIVE DEFENSE

2

### (Consent and Ratification)

3       4.      Provident's claims are barred in whole or in part to the extent that, by reason

4    of the knowledge, statements, and conduct of Provident and its agents, Provident has

5    consented to and ratified the acts of Lydian complained of by Provident.

6

7

## FIFTH AFFIRMATIVE DEFENSE

8

### (Waiver)

9       5.      Provident's claims are barred in whole or in part by the doctrine of waiver.

10

11

## SIXTH AFFIRMATIVE DEFENSE

12

### (Avoidable Consequences)

13      6.      Lydian is informed and believes, and based thereon alleges, that Provident

14   failed to use the preventive and corrective measures that Lydian provided, and the

15   reasonable use of information provided by Lydian would have prevented some or all of the

16   harm that Provident allegedly suffered.

17

18

## SEVENTH AFFIRMATIVE DEFENSE

19

### (Lack of Causation)

20      7.      While Lydian denies that Provident has been damaged in any way, if at all, if

21   it should be determined that Provident has been damaged, then Lydian is informed and

22   believes, and based thereon alleges, that such damage was not caused by Lydian.

23

24

25

26

27

28

-5-

1

## SIXTH AFFIRMATIVE DEFENSE

2

### (Performance of Duties)

3      8.      Lydian has fully performed its contractual, statutory and other duties, if any,

4   to Provident.

5

6

## NINTH AFFIRMATIVE DEFENSE

7

### (Failure to Mitigate Damages)

8      9.      Provident's claims are barred in whole or in part by Provident's failure to

9   mitigate its damages, if any.

10

11

## TENTH AFFIRMATIVE DEFENSE

12

### (Adequate Remedy at Law)

13      10.      Provident's claims, including any claim for specific performance, are barred

14   in whole or in part because Provident has an adequate remedy at law.

15

16

## ELEVENTH AFFIRMATIVE DEFENSE

17

### (Course of Dealing)

18      11.      Provident's claims are barred in whole or in part based on the course of

19   dealing between Provident and Lydian.

20

21

## TWELFTH AFFIRMATIVE DEFENSE

22

### (Speculative Damages)

23      12.      Provident's claims are barred in whole or in part because Provident's alleged

24   damages are speculative and not capable of being proved with reasonable certainty.

25

26

27

28

-6-

1

## THIRTEENTH AFFIRMATIVE DEFENSE

2

### (Failure to Cover)

3        13.    Provident's claims are barred in whole or in part because Provident breached

4   its obligation to cover by selling the loans to another buyer within a reasonable time.

5

6

## FOURTEENTH AFFIRMATIVE DEFENSE

7

### (Lack of Actual Damages)

8        14.    Provident's claims are barred in whole or in part because Provident has

9   suffered no actual damages from the breach of contract alleged.

10

11

## FIFTEENTH AFFIRMATIVE DEFENSE

12

### (Lack of Material Breach)

13       15.    Provident's claims are barred in whole or in part because Provident has not

14   alleged a breach of a representation or warranty that is material or that materially and

15   adversely affects the value and/or marketability of any loan.

16

17

## SIXTEENTH AFFIRMATIVE DEFENSE

18

### (Election of Remedies)

19       16.    Provident's claims are barred in whole or in part based on Provident's

20   election to affirm the Agreement by accepting payments on loans as to which Provident

21   has demanded repurchase or that Lydian pay Provident's alleged losses.

22

23

## SEVENTEENTH AFFIRMATIVE DEFENSE

24

### (Waiver of Section 6.01 of the Agreement)

25       17.    Provident's claims are barred in whole or in part because Provident failed to

26   make its requests that Lydian repurchase loans or pay Provident its alleged losses within a

27   reasonable time, waiving Provident's rights under Section 6.01 of the Agreement.

28

-7-

1

## EIGHTEENTH AFFIRMATIVE DEFENSE

2

### (Contributory Fault)

3

    18.   Provident's claims are barred in whole or in part because any damages

4 established by Provident were caused by Provident's own actions or inaction.

5

6

## NINETEENTH AFFIRMATIVE DEFENSE

7

### (Insufficient Notice)

8

    19.   Provident's claims are barred in whole or in part because Provident failed to

9 provide Lydian with sufficient notice of its alleged breaches of contract, as required by the

10 Agreement.

11

12

## TWENTIETH AFFIRMATIVE DEFENSE

13

### (Lack of Standing)

14

    20.   Provident's claims are barred in whole or in part because Provident lacks

15 standing to raise them.

16

17

## TWENTY-FIRST AFFIRMATIVE DEFENSE

18

### (Lack of Ripeness)

19

    21.   Provident's claims are barred in whole or in part because they are not ripe for

20 adjudication.

21

22

## TWENTY-SECOND AFFIRMATIVE DEFENSE

23

### (Single Action Rule)

24

    22.   Provident's claims are barred in whole or in part because Provident split its

25 claims arising from the Agreement in violation of the single action rule.

26

27

28

-8-

           AMENDED ANSWER TO COMPLAINT

1

## TWENTY-THIRD AFFIRMATIVE DEFENSE

2

### (Res Judicata)

3      23.    Provident's claims are barred in whole or in part by the doctrine of res

4 judicata.

5

6

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

7

### (Collateral Estoppel)

8      24.    Provident's claims are barred in whole or in part by the doctrine of collateral

9 estoppel.

10

11

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

12

### (Failure to Tender Defense)

13      25.    Provident's claims are barred in whole or in part because Provident failed to

14 tender Lydian the defense of repurchase demands made to Provident by investors, as

15 required due to Lydian's alleged status as Provident's indemnitor.

16

17

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

18

### (Separate and Additional Defenses)

19      26.    Lydian alleges that it may have other separate and additional defenses of

20 which it is not presently aware and hereby reserves the right to raise such defenses by

21 amendment of this Answer, including to conform to proof at trial.

22

23

24

25

26

27

28

-9-

1    WHEREFORE, Lydian requests the Court to dismiss Provident's complaint

2  in its entirety and award Lydian its reasonable costs and attorney's fees, as well as such

3  other and further relief that the Court deems appropriate.

4

5  Dated: March 23 , 2011

6                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7
                         By _____
8                                          Robert J. Stumpf, Jr.;

9                                  Attorneys for LYDIAN PRIVATE BANK,
10                                 VIRTUALBANK, A DIVISION OF LYDIAN
                                          PRIVATE BANK.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-10-

1 | **VERIFICATION**

2 I have read the foregoing:

3 **AMENDED ANSWER TO COMPLAINT FOR BREACH OF WRITTEN CONTRACT**

4 and know its contents.

5

6 ☐ I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

7

8 ☒ I am the Executive Vice President/General Counsel and the authorized agent of Lydian Private Bank, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

9

10 ☒ I am informed and believe and on that ground allege that the matters stated in the foregoing documents are true.

11 ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

12

13 ☐ I am the Executive Vice President/General Counsel of Lydian Private Bank, a party to this action.  Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

14

15

16 Executed on March 23 , 2011 at Pln Beach Gdns, Florida.

17 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

18

19

Chris Boldman

20 Print Name                                    Signature

21

22

23

24

25

26

27

28

-11-

1

## PROOF OF SERVICE

2

*Provident Funding Associates, L.P. v. Lydian Private Bank, Virtual Bank, et al.*
San Mateo County Superior Court Case No. CIV 495700

3

4        I am employed in the County of San Francisco; I am over the age of eighteen years and not a party to the within entitled action; my business address is Four Embarcadero Center, 17th Floor, San Francisco, California 94111-4109.

5

6        On March 23, 2011, I served the following documents described as **AMENDED ANSWER TO COMPLAINT AND FIRST SUPPLEMENTAL COMPLAINT FOR BREACH OF WRITTEN CONTRACT** on the interested parties in this action by placing
7    true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

8    Neil R. O'Hanlon, Esq.                        *Attorney for Plaintiff*
    Hogan Lovells US LLP                   *Provident Funding Associates, LP*
9        1999 Avenue of the Stars, Suite 1400
    Los Angeles, CA  90067
10       Email: neil.ohanlon@hoganlovells.com

11   ☒   **BY MAIL:** I am readily familiar with the firm's practice of collection and processing
12   correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at San Francisco, California in
13   the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day
14   after date of deposit for mailing in affidavit.

15   ☐   **BY OVERNIGHT DELIVERY:** I served such envelope or package to be delivered on
the same day to an authorized courier or driver authorized by the overnight service carrier
16   to receive documents, in an envelope or package designated by the overnight service carrier.

17   ☐   **BY FACSIMILE:** I served said document(s) to be transmitted by facsimile pursuant to
18   Rule 2.306 of the California Rules of Court. The telephone number of the sending facsimile machine was 415-434-3947. The names and facsimile machine telephone
19   numbers of the persons served are set forth in the service list. The sending facsimile machine (or the machine used to forward the facsimile) issued a transmission report
20   confirming that the transmission was complete and without error. A copy of that report is attached to this declaration.

21   ☒   **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or
22   agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed above.
23   The electronic notification address from which I served the documents is jgorsi@sheppardmullin.com

24   ☐   **BY HAND DELIVERY:** I caused such envelopes to be delivered by hand to the office of
25   the addressees.

26   ☒   **STATE:** I declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.

27

28

-1-

1    ☐    **FEDERAL:** I declare that I am employed in the office of a member of the bar of this
            Court at whose direction the service was made. I declare under penalty of perjury under
2           the laws of the United States of America that the foregoing is true and correct.

3           Executed on March 23, 2011, at San Francisco, California.

4

5                                                    _____
                                                     Jane Gorsi
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

## Jane Gorsi

| From: | Jane Gorsi |
| Sent: | Wednesday, March 23, 2011 5:19 PM |
| To: | 'neil.ohanlon@hoganlovells.com' |
| Subject: | Privident v. Lydian |
| Attachments: | DOC.PDF |

Dear Mr. O'Hanlon . . .

Attached is a copy of Lydian Private Bank's Amended Answer to Complaint and First Supplemental Complaint for Breach of Written Contract, filed today in San Mateo County Superior Court.

Jane Gorsi
Assistant to Martin White

# EXHIBIT E

# NOTICE OF CASE MANAGEMENT CONFERENCE

**FILED**
SAN MATEO

Provident Funding Associates
~~JUN - 7 2010~~
~~Clerk of the Superior Court~~
By _____ DEPUTY CLERK

vs.

Lydian Private Bank et al

Case No. **CIV 495700**

Date: 10/06/10

Time: 9:00 a.m.

Dept. – on Tuesday & Thursday
Dept. 7 – on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

    a. Serve all named defendants and file proofs of service on those defendants with the court within 60 days of filing the complaint (CRC 201.7).

    b. Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

    c. File and serve a completed Case Management Statement at least 15 days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

    d. Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30 days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of case management conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10 days prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:

    a. Referring parties to voluntary ADR and setting an ADR completion date;

    b. Dismissing or severing claims or parties;

    c. Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent

# EXHIBIT F

1  HOGAN LOVELLS US LLP
   NEIL R. O'HANLON, SBN 67018
2  1999 Avenue of the Stars, Suite 1400
   Los Angeles, CA 90067
3  Tel. (310) 785-4600
   Fax (310) 785-4601
4
   Attorneys for Plaintiff Provident Funding Associates, L.P.
5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SAN MATEO

10

11  PROVIDENT FUNDING                )    Case No. CIV 495700
    ASSOCIATES, L.P.,                )
12                                   )    **PLAINTIFF'S RESPONSE TO SECOND**
                  Plaintiff,         )    **SET OF SPECIAL INTERROGATORIES**
13                                   )    **(NOS. 232 – 234)**
                                     )
14        vs.                        )
                                     )
15  LYDIAN PRIVATE BANK,             )
    VIRTUALBANK, A DIVISION OF       )
16  LYDIAN PRIVATE BANK, and Does    )
    1 through 20,                    )
17                                   )
                  Defendants.        )
18  _____  )

19  PROPOUNDING PARTY:        DEFENDANT LYDIAN PRIVATE BANK

20  RESPONDING PARTY:         PLAINTIFF PROVIDENT FUNDING
                              ASSOCIATES, L.P.
21
    SET NO.:                  ONE
22

23         Plaintiff Provident Funding Associates, L.P. ("Provident Funding") hereby responds

24  to the Second Set of Special Interrogatories of Defendant Lydian Private Bank

25  ("Defendant") as follows:

26                          **PRELIMINARY STATEMENT**

27         These responses are made pursuant to California Code of Civil Procedure Section

28  2030.010 et seq. and solely for the purposes of this action. Each response is subject to all

---

\\LA - 098259/000028 - 484950 v1

1          PLAINTIFF'S RESPONSE TO SECOND SET OF
           SPECIAL INTERROGATORIES (NOS. 232-234)

1   objections as to competence, relevance, materiality, propriety, and admissibility, and any
2   and all other objections and grounds which would require the exclusion of any statement
3   herein if the questions were asked of, or any statements contained herein were made by, a
4   witness present and testifying in court, all of which objections and grounds are reserved
5   and may be interposed at the time of trial.

6          These responses are made on the basis of information that is presently known and
7   available to Provident Funding and its attorneys.  Provident Funding reserves the right to
8   amend or supplement its responses in the event that any information previously available is
9   unintentionally omitted from Provident Funding's response.  Provident Funding responds
10  to the interrogatories as it understands and interprets them in light of the issues framed in
11  the pleadings in this litigation.  If Defendant subsequently asserts an interpretation of any
12  individual interrogatory that differs from Provident Funding's understanding, Provident
13  Funding reserves the right to supplement its responses and/or objections herein.

14         Provident Funding's investigation and discovery of facts is continuing.  Provident
15  Funding reserves the right to refer to, to conduct discovery with reference to, or to offer
16  into evidence, any and all facts, information, evidence, documents and things developed in
17  the course of discovery and trial preparation, notwithstanding the reference to facts,
18  evidence, information, documents and things in these responses.  However, Provident
19  Funding assumes no obligation to voluntarily supplement or amend these responses to
20  reflect facts, information, evidence, documents and/or things discovered following service
21  of these responses.

22         Provident Funding reserves the right to introduce at trial or deposition, or in
23  opposition to any motion or proceeding, any and all facts heretofore or hereafter produced
24  by the parties in this action or by third parties. Provident Funding's responses are without
25  prejudice to its right to establish at a later date any additional or contrary facts that may be
26  contained within or discovered as a result of any subsequent review of documents or as a
27  result of any subsequent review of discovery.

28

1 | **GENERAL OBJECTIONS**

2 | The following General Objections apply to each of the interrogatories whether or

3 | not specifically referred to and/or incorporated in each response:

4 | 1. Provident Funding objects to each interrogatory to the extent that it seeks

5 | privileged information, including, without limitation, information protected by the

6 | attorney-client privilege and/or the attorney work-product doctrine. To the extent that any

7 | interrogatory seeks such privileged information, Provident Funding will not provide such

8 | information. Moreover, even if Provident Funding inadvertently provides information

9 | protected from disclosure by the foregoing privileges, Provident Funding does not waive

10 | its right to assert those privileges and/or objections to disclosure subsequently.

11 | 2. Provident Funding objects to each interrogatory to the extent that it seeks

12 | disclosure of facts and information that contain sensitive confidential and proprietary

13 | business information and/or constitute trade secret information pursuant to California Civil

14 | Code Section 3426.1 and/or applicable state and federal common law.

15 | 3. Provident Funding objects to each interrogatory to the extent that it would

16 | result in the disclosure of information in violation of privacy rights of individuals under

17 | Article 1, Section 1 of the California Constitution, or any other constitutional, statutory, or

18 | common law right of privacy of any person.

19 | 4. Provident Funding objects to each interrogatory to the extent that it requires

20 | Provident Funding to identify facts, documents or persons other than those that Provident

21 | Funding has presently ascertained with reasonable diligence, on the grounds that each

22 | request is overbroad, subjects Provident Funding to unreasonable burden and oppression,

23 | and attempts to expand Provident Funding's obligations beyond that which is required by

24 | the California Code of Civil Procedure.

25 | 5. Provident Funding objects to each interrogatory to the extent that the term

26 | "YOU" or "YOUR" means any entity other than Provident Funding and its agents,

27 | representatives, or employees acting on its behalf.

28 | 6. Provident Funding objects to Defendant's definitions to the extent they

1   purport to impose duties and obligations in addition to or inconsistent with those imposed

2   by the California Code of Civil Procedure.

### RESPONSES TO SPECIAL INTERROGATORIES

4   **SPECIAL INTERROGATORY NO. 232:**

5       For the purposes of determining diversity of citizenship pursuant to 28 U.S.C. §

6   1332, identify all partners of Provident Funding Associates, LP and their names, addresses,

7   and states of citizenship.  If any partners of Provident Funding Associates, LP are

8   partnerships or limited liability companies, identify all partners or members of each such

9   partnership or limited liability company and their names, addresses, and states of

10   citizenship, and if any such partners are themselves partnerships or limited liability

11   companies, identify all partners or members of those partnerships or limited liability

12   companies, and so forth, until all natural persons and/or corporations comprising the

13   beneficial ownership of Provident Funding Associates, LP are identified, along with their

14   names, addresses, and states of citizenship.

15   **RESPONSE TO SPECIAL INTERROGATORY NO. 232:**

16       For the purpose of determining diversity of citizenship, Provident Funding responds

17   that as of the date of filing of the Complaint its general partner was a California

18   corporation with its principal place of business in California and that all of its limited

19   partners were natural persons who were citizens of California.  Provident Funding objects

20   to providing any further information regarding its partners on the ground that such

21   information is not needed for the purpose of determining diversity of citizenship, is

22   confidential, and is not calculated to lead to the discovery of admissible information.

23   **SPECIAL INTERROGATORY NO. 233:**

24       Please IDENTIFY persons who have knowledge of facts supporting YOUR

25   response to the previous interrogatory.

26   **RESPONSE TO SPECIAL INTERROGATORY NO. 233:**

27       Michelle Blake, Provident Funding (contact solely through counsel for Provident

28   Funding).

1  **SPECIAL INTERROGATORY NO. 234:**

2      Please IDENTIFY all DOCUMENTS supporting YOUR response to interrogatory

3  no. 232.

4  **RESPONSE TO SPECIAL INTERROGATORY NO. 234:**

5      Provident Funding objects to producing documents regarding its partners on the

6  ground that such documents are not needed for the purpose of determining diversity of

7  citizenship, and confidential, and are not calculated to lead to the discovery of admissible

8  information.

9

10  DATED: March 23, 2011          HOGAN LOVELLS US LLP

11

12                   By _Neil R. O'Hanlon_

13                        Neil R. O'Hanlon

14                   Attorneys for Plaintiff Provident Funding
                 Associates, L.P.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **VERIFICATION**

2 |     I have read the foregoing Plaintiff's Response to First Set of Special Interrogatories,

3 | and know its contents.

4 |     I am an officer of Provident Funding Associates, L.P., a party to this action, and am

5 | authorized to make this verification for and on its behalf, and I make this verification for

6 | that reason. I am informed and believe and on that ground allege that the matters stated in

7 | the foregoing document are true.

8 |     Executed on March 23, 2011, at Burlingame, California.

9 |     I declare under penalty of perjury under the laws of the State of California that the

10 | foregoing is true and correct.

11 |

12 |                                      *Michelle Blake*

13 |                                    Michelle Blake

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA        )
                                 ) ss.
3    COUNTY OF LOS ANGELES      )

4    I am employed in the County of Los Angeles, State of California. I am over the age of
     eighteen and not a party to the within action; my business address is: HOGAN LOVELLS
5    US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, CA 90067.

6    On March 24, 2011, I caused the foregoing documents described as:

7    **PLAINTIFF'S RESPONSE TO SECOND SET OF SPECIAL INTERROGATORIES
     (NOS. 232 – 234)**

8    to be served on the interested parties in this action by placing $\underline{X}$ the original $\underline{X}$ a true copy
9    thereof enclosed in sealed envelopes addressed as follows:

10   Robert J. Stumpf, Jr., Esq. (original by mail)   Joel M. Miller, Esq.        (by e-mail)
     Sheppard, Mullin, Richter, & Hampton LLP         Charles R. Jacob, III, Esq.
11   Four Embarcadero Center, 17th Floor              Jeremy M. Sher, Esq.
     San Francisco, CA 94111                          Miller & Wrubel P.C.
12   E-mail: RStumpf@sheppardmullin.com               570 Lexington Avenue
                                                       New York, NY 10022
13                                                     jmiller@mw-law.com
                                                       cjacob@mw-law.com
14                                                     jsher@mw-law.com

15   [X]  BY MAIL. I am "readily familiar" with the firm's practice of collection and
          processing correspondence for mailing. Under that practice it would be deposited
16        with U.S. postal service on that same day with postage thereon fully prepared at Los
          Angeles, California in the ordinary course of business. I am aware that on motion of
17        the party served, service is presumed invalid if postal cancellation date or postage
          meter date is more than one day after date of deposit for mailing in affidavit.
18
     [X]  BY E-MAIL. Based on an agreement of the parties to accept service by e-mail, I
19        caused the document to be sent to the person at the e-mail address listed above. I did
          not receive, within a reasonable time after the transmission, any electronic message
20        or other indication that the transmission was unsuccessful.

21   [ ]  BY FEDERAL EXPRESS. I caused such document to be delivered by overnight
          mail to the offices of the addressee(s) by placing it for collection by Federal Express
22        following ordinary business practices by my firm, to wit, that packages will either be
          picked up from my firm by Federal Express and/or delivered by my firm to the
23        Federal Express office.

24   [X]  (State) I declare under penalty of perjury under the laws of the State of California
          that the  foregoing is true and correct. Executed on March 24, 2011, at Los Angeles,
25        California.

26   [ ]  (Federal) I declare that I am employed in the office of a member of the bar of this
          court at whose direction the service was made. Executed on, at Los Angeles,
27        California

28   Marjorie Sener                           Signature
     Print Name

                                    PLAINTIFF'S RESPONSE TO SECOND SET OF
                              7     SPECIAL INTERROGATORIES (NOS. 232-234)